T. J. DUNBAR & COMPANY, plaintiffs in error, *vs.* REBECCA J. MIZE, defendant in error.

(TRIPPE, Judge, was providentially prevented from presiding in this case.)

1. Section 1783 of the Code, which declares "that while the wife may contract, she cannot bind her separate estate, by any contract of suretyship, nor by any assumption of the debts of her husband; and any sale of her separate estate made to a creditor of her husband in extinguishment of his debt, shall be absolutely void," applies not only to a separate estate of the wife created by deed, but to any property held by her as "separate estate" under the act of 1866, or constitution of 1868, and under this rule a mortgage made by the wife to secure a debt of her husband is void.

2. Where a married woman gave a mortgage upon her separate estate to secure a note made by her husband, and the mortgage recited that the

debt for which the note was given was contracted for the benefit of the wife and family:

*Held*, that the wife was not estopped by this recital from showing that the same was untrue, and that the debt was wholly her husband's debt.

Husband and wife. Mortgage. Estoppel. Before Judge CLARK. Sumter Superior Court. April Term, 1874.

On January 15th, 1868, William Mize and his wife, Rebecca J. Mize, executed to T. J. Dunbar & Company, a mortgage upon a lot of land in Sumter county, to secure the payment of a promissory note made by said William Mize, on or about December 31st, 1867, due one day after date, payable to T. J. Dunbar & Company, for $809 65. The mortgage recites that the note was given in payment for merchandize which went to the use of Mize and wife. Proceedings having been instituted to foreclose said instrument as against Rebecca J. Mize, she showed for cause substantially as follows:

The aforesaid note is the individual obligation of William Mize, the late husband of defendant. She derived no personal benefit from the consideration which moved her said husband to sign the same. She was in no way connected with the transaction out of which the note grew. The execution of the mortgage by her was an effort to become security for her said husband by giving the plaintiffs a lien on her separate estate.

The plaintiffs demurred to said answer. The demurrer was overruled and plaintiffs excepted.

The evidence sustained the answer, except there was no testimony as to how the land specified in the mortgage became the property of defendant.

The court charged the jury that if the mortgage was given to secure the payment of a debt due from William Mize, and Rebecca J. Mize was not at all interested in the consideration, the same was void, and they ought not to find for the plaintiffs.

The plaintiffs requested the court to charge that the defendant was estopped from denying the recitals in the mort-

Dunbar & Company *vs.* Mize.

gage as to the consideration of the note. The court refused so to charge. To which charge and refusal to charge the plaintiffs excepted. The jury found for the defendant.

Error is assigned upon each of the aforesaid grounds of exception.

W. A. HAWKINS, by J. A. ANSLEY, for plaintiffs in error.

GUERRY & SON, for defendant.

McCAY, Judge.

1. Section 1783, of our Code, is as follows: "The wife is a *feme sole* as to her separate estate unless controlled by the settlement. Every restriction upon her power in it must be complied with; but while the wife may contract she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and any sale of her separate estate made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." It is contended that this only applies to separate estates created by "settlement," and not to the "separate estate" which the wife, by the act of 1866, and by the constitution of 1868, retains in all her property at the marriage, or which she may acquire by gift, purchase or inheritance afterwards. But we do not think this a fair construction of this section of the Code. Evidently its intent is to afford a personal protection to the wife in any "separate estate" she may have, against the supposed influence of her husband. As to cases where the settlement controls her, such a clause is unnecessary, since, by the first part of the section, as well as by the old law, her powers must necessarily be limited by that. The latter part of the section can only refer to cases where she has a separate estate, and is not controlled or restricted, either by the deed or by the law, in the disposition of it, and we see no reason in the language of this latter clause, and much less in the plain intent of it, to limit its operation to such separate estate as she may have by "deed" specially defining it as "separate estate."

By our act of 1866, and by the constitution of 1868, all property of the wife which she may have at the marriage, or which she may afterwards acquire, is, in terms, declared "separate estate" in her, and as to such property, the very terms of this section declare that she shall not bind it by any contract of suretyship, or by any assumption of her husband's debts, etc. The words of the section are not "separate estate created by deed," or "such separate estate," but "separate estate" simply. By the general rule of law all conveyances of an estate in fee, gave to the grantee a right to dispose of it at pleasure, and any condition inconsistent with this unlimited power of disposal, was void. But in the case of married women, as to their "legal estates," they could not be disposed of at all, except by a fine, which was a kind of judgment, and was transacted of record. By our act of 1767, a less cumbrous method was provided, but even by this act great precautions are taken to see to it that the wife acts freely and independently of the husband. In equity, where, under the doctrine of trusts, separate estates grew up in England, the rule of law that a full title to an estate could not be burdened with a condition limiting the power of disposition, was, in this special case, not attended to, and for the plain reason that a separate estate in which the wife was not protected from the influence of the husband, was of very doubtful benefit to her. Still, if men saw fit to settle the property upon married women, and did not use in the deed this power of restraint, the chancery courts took it for granted that the donor intended to risk the husband's influence, and permitted the wife to deal with it, even as to him, without restraint. But this section of our Code slips in and limits the right of the wife, even when by the settlement she is unrestrained, and declares that she shall not enter into a contract of suretyship, or bind her estate for her husband's debts, or sell it to pay them. It puts her under disability to do this thing, and declares the act void if it shall be done. *Mrs. Valentino's* case in 41 *Georgia Reports*, 143, does not touch the question we are now discussing. There, the contract of Mrs. Valen-

Dunbar & Company *vs.* Mize.

tino was made in 1860, before the Code, and the question was, whether, under the act of 1851, her earnings during the separation between her and her husband, stood upon the same footing as though they had come to her by a deed restricting her rights.  I did not agree to this decision, but it turned on wholly a different question from that involved here.

2.  We think, too, the court was right in refusing to sustain the objection to Mrs. Mize's defense on the ground that she was estopped by the recitals in the deed.  Ordinarily, this is, without doubt, the rule.  But the wife, as to such a recital, is under duress.  It is the same thing as though you were to insist that an infant was bound because his deed recited that he was of full age.  If it had appeared that this recital misled the mortgagees, and that they acted to their hurt on the faith of it, there might be some ground for an estoppel in *pais*, as a woman, even a married one, cannot commit a fraud with impunity.  But there was no pretence here of an estoppel in *pais;* the mortgagees knew as much and perhaps more about the debt than Mrs. Mize did, and in no event are they any worse off.  They still have their note on Mize.  The mortgage did not hurt that.  If there be an estoppel it is an estoppel by deed, and to set up an estoppel in such a case against one under disability would be to defeat the whole purpose of the statute.  The protection afforded by the statute would be a farce if it could be evaded by a recital.  The same influence that procured the deed could as easily produce the recital, and would not stop to do it.  The case of *Finney vs. Sanford,* 41 *Georgia,* 301, was a case of estoppel in *pais.*  The plaintiff had acted on the statement of the wife, he had given up a debt of his own on a third person for the note of the husband, on the faith of the statement of the wife that the husband's debt was contracted for the use of the estate of the wife.  Upon a clear inspection of that case it will be found also that the majority of the court merely *held* that the recital, as well as the sayings of Mrs. Sanford, were *evidence,* not that they estopped her.

Judgment affirmed.