Sutton *vs.* Aiken, trustee.

---

## SUTTON *vs.* AIKEN, trustee.

1. A conveyance in trust for a woman, married or single, of full age and sound mind, with no remainder to protect, and nothing prescribed for the trustee to do, operates to pass the legal title immediately into the beneficiary, the conveyance being made since the

passage of the act of 1866 which secures to women all their property as separate estate.   The trust is executed.

2. Where the wife's land is conveyed by her and her husband to pay his debt, or to secure its payment, or to induce its payment, she receiving no consideration, the title does not pass.   Her deed, as between her and all persons affected with notice, is void.

3. Notice that a married woman who has conveyed is still the owner without more, is enough to put a stranger on inquiry into the facts.

Trusts.   Title.   Husband and wife.   Notice.   Before Judge TOMPKINS.   McIntosh Superior Court.   May Term, 1878.

Aiken as trustee for his wife, brought ejectment against Sutton for four acres of land.   Subsequently plaintiff amended by adding a demise from his said wife, and by alleging that he and his said wife jointly made a deed of the premises to one Epping, the consideration of which was the payment of a debt due by said Aiken to said Epping, and thus illegal and the sale void; that Epping was afterwards repaid said debt by the sale of other property and promised to reconvey, which he has failed to do ; and that when defendant proposed to purchase from Epping, he was informed of these facts.

The defendant pleaded as follows :

1. The general issue.

2. That he bought the premises in good faith and for a consideration, and being in possession *bona fide* and under claim of right, he had put on the land improvements worth $1,000, of which he claimed the benefit.

3. That the conveyance from Aiken and wife to Epping was not in payment of any debt due by Aiken to Epping, but in pursuance of a *bona fide* sale from Mrs. Aiken to Epping for money paid by Epping at the request of Mrs. Aiken, and without any promise on the part of Epping to reconvey.

The plaintiff showed a chain of title terminating in himself, the last deed being from Rhett to him, "trustee for Fannie M. Aiken," dated November 2d, 1868.   In this

Sutton *vs.* Aiken, trustee.

conveyance there were no words to create any trust except the description of the grantee as "trustee for Fannie M. Aiken."

The defendant introduced a deed from Aiken, trustee for his wife, and his said wife, to Epping, dated June 13, 1870, covering the land embraced in the conveyance from Rhett, consideration $1,629.00. Also, deed from Epping to Sutton, covering the land sued for, dated June 5, 1873.

The defendant testified that he bargained for the land with Epping, and agreed to pay $300.00. That before he obtained a deed, or built a house or fence, he received notice from plaintiff that it belonged to his wife; that he so informed Epping, who told him that it was all right, and he took his title. That before plaintiff gave him notice, he went upon the land with intent to take possession, and, as a preparation for building, cut away brush, dug drains, and otherwise began to clear up the place. That his bargain was closed before the notice, but he had not paid for the land, or taken possession otherwise than as stated.

Holmes testified that he purchased from Epping a part of the land sold by Rhett to Aiken, trustee, for $1,600.00; that he afterwards obtained a confirmation from Mr. and Mrs. Aiken.

Wylly testified that he rented from Epping the part he sold to Holmes before the latter bought, for eighteen months, at $50.00 per quarter; that he paid him about $175.00 and owes him the balance.

Plaintiff, in rebuttal, testified, that the property was conveyed to Epping to secure the repayment of money advanced by him to the United States marshal on an execution against Aiken & Goodrich, of which firm plaintiff had been a member; that Epping took up the execution at fifty cents on the dollar; that Mrs. Aiken only consented to sign the deed upon the understanding that Epping would reconvey when reimbursed; that this arrangement was not sought by Epping, but was proposed to him; that witness served written notice of his wife's title on Sutton; that Epping has already received more than he advanced.

Sutton *vs*. Aiken, trustee.

Epping testified, in brief, as follows: The conveyance to him was not made for the purpose of paying or securing any debt due to him by Aiken, but in pursuance of a *bona fide* sale for the consideration named in the deed. The money was paid at the request of Aiken and wife to a United States deputy marshal, who, as he was informed, held an execution against Aiken. The land sued for is part of the tract. When he bought Aiken was already largely indebted to him, so that when called on for further assistance, he declined. Under the most urgent pressure from Mr. and Mrs. Aiken, the latter appealing to his wife, witness agreed to buy the property. He sold the main portion for $1,600.00, but is still considerably out of pocket by the transaction. The account is about as follows: Received from Holmes, $1,600.00; rent, $65.00; from Sutton, $125.00=$1,790.00. Paid for property $1,629.00; taxes and insurance, $140.00; interest, $400.00; lawyer's fees, $121.00=$2,290.00, leaving balance of about $500.00 unpaid. Did not promise to reconvey as soon as he was indemnified, before deed was made. Afterwards, he was several times approached by Mrs. Aiken on the subject, but does not remember making any such promise. Would willingly, however, have reconveyed up to time property was sold, whenever Aiken or wife would have re-imbursed him. They were both apprised of the sales to Holmes and Sutton before they were made.

Other evidence was introduced, not material here. The court charged the jury, in substance, that although a married woman could convey her separate estate, yet her ability to do so was subject to the restrictions stated in section 1,783 of the Code; that if the jury should find that Mrs. Aiken, in joining with her husband as trustee in the deed to Epping, had made a contract of suretyship, or had assumed a debt of her husband, or had made the conveyance in extinguishment of a debt due by her husband to Epping, then the deed was void and Epping obtained no title; that the title to Sutton would not be void if he took without notice of the rights or claims of Mrs. Aiken.

The jury found for the defendant. The plaintiff moved for a new trial upon the following grounds:

1. Because title was shown to be in plaintiff, which entitled him to recover, and the evidence did not show that title had ever passed out of him.

2. Because the court admitted in evidence the deed from Aiken, trustee, and wife to Epping.

3. Because the verdict was contrary to law and evidence.

The motion was sustained and defendant excepted.

JACKSON, LAWTON & BASINGER, for plaintiff in error cited Code, §§2329, 3092; 1 Story's Eq. Jur., 399.

RUFUS E. LESTER, for defendant, cited Code, §§3717, 3718, 1783, 1785, 2337, 1951; 54 *Ga.*, 543; 53 *Ib.*, 437; 59 *Ib.*, 29, 380; 47 *Ib.*, 479; 53 *Ib.*, 353.

BLECKLEY, Justice.

The verdict was for the defendant, and the court granted a new trial. Shall we reverse the order for a new trial, is the general question for decision.

1. There were two demises in the declaration, one from Aiken as trustee for his wife, and the other from Mrs. Aiken herself. In whom was the legal title prior to the conveyance to Epping? We think it was in Mrs. Aiken. In the conveyance from Rhett to her husband, a trust for her benefit was indicated by the bare fact that he was denominated in the deed her trustee. Section 2307 of the Code declares, "No words of separate use are necessary to create a trust estate for the wife. The appointment of a trustee, or any words sufficient to create a trust, shall operate to create a separate estate." And the preceding section, which is general as to all trust estates, declares, "No formal words are necessary to create such an estate. Whenever a manifest intention is exhibited that another person shall have the benefit of the property, the grantee shall be declared a trustee." These provisions of the Code open

a fresh source in our law, from which the trust stream flows in its natural channel, if it did not do so before. What is more manifest to common sense than that a husband who, in the deed by which he acquires land, describes himself as the trustee of his wife, intends to take in that character, and for her benefit, not for his own? Moreover, in this case Mrs. Aiken was recognized as the beneficiary by Epping; for in the conveyance which he took from her and her husband, the latter was described as her trustee, and the former was expressly denominated *cestui que trust.* Prior to the act of 1866, (Code, §1754,) such a trust would perhaps have been executory, and would have continued on foot so long as the coverture existed, but that act, as has been several times decided, introduced a new rule of property in respect to married women, and a corresponding enlargement of their legal capacity. With reference to her separate estate, a female, married or single, is now on full equality with a male, except in a few particulars defined by statute. Save in those particulars, when her equitable rights are commensurate with those of the male, her legal rights are also commensurate with his, and the difference of sex is utterly immaterial. Whenever the subtle action of law-chemistry, perhaps I should rather say law-magic, for it resembles magic more than natural science,.transmutes his equitable rights into legal rights, the like transmutation, the conditions being the same, .will be effected upon hers. A consequence of this exact parallelism between the sexes is, that a conveyance, made since the act of 1866, in trust for a woman, married or single, of full age and sound mind, with no remainder to protect, and nothing prescribed for the trustee to do, operates to pass the legal title immediately into the beneficiary. The trust is executed in the moment of its creation. "In an executed trust for the benefit of a person capable of taking and managing property in his own right, the legal title is merged immediately into the equitable interest, and the perfect title rests in the beneficiary accord-

ing to the terms and limitations of the trust." Code, §2314. " Trusts are either executed or executory. In the former, everything has been done by the trustee required to secure the property, or to render certain the interest of the bene- ficiaries, and all that remains for him to do is to preserve the property and execute the beneficial purposes. In ex- ecutory trusts, something remains to be done by the trustee, either to secure the property, to ascertain the objects of the trust, or to distribute according to a specified mode, or some other act to do which requires him to retain the legal title." *Ib.*, §2313. It may be thought that the work of ascertaining whether the legal title was in Mrs. Aiken rather than in her husband as her trustee, is superfluous for the purposes of the present case, and this may be true; but the question was argued at the bar, and its decision obviates certain possible difficulties in reference to a trustee who has acted with the consent of his *cestui que trust*, repudiating his own deed, and setting up his own abuse of his trust functions. Furthermore, there being two demises in the declaration, there is a propriety in pointing out which of them, according to the evidence, envelopes the real strength of the plaintiff's case.

2. The indication in the evidence is very strong that whether Epping bought the land absolutely, or whether he took title on an understanding to re-convey upon the re- payment of the money which he advanced, the object of the transaction was to raise money to be applied on the debt of Aiken, the husband, and that the price of the property was, in fact, so applied by Epping himself. It is, doubtless, true that Epping did not volunteer his interposition in the matter, and that he was urged to it by Aiken, and not im- probably by Mrs. Aiken herself. His motive may have been kindness, pure benevolence, without any view to gain; per- haps it was, and it may be ungrateful and ungracious in the Aikens to reclaim the land as against him or his grantee. They, however, justify themselves with the answer that he has been reimbursed in full, which he denies. There is

conflict in the evidence of Aiken and Epping, but it seems not to go to the legal hinge of the controversy. While Epping insists that he purchased the land out and out, and paid for it, we do not understand him as denying that the inducement to the transaction was to relieve Aiken from the pressure of an execution against him, which was in the hands of the United States marshal, or that he made the payment by taking up that execution. He seems, on the contrary, to admit it. According to his own evidence, it looks like Mrs. Aiken's land went to raise money to pay the debt of her husband, and that Epping was not only cognizant of the purpose, but aided in carrying it out even to the extent of paying over the money to the officer in whose hands the debt was. Epping got the land, and Aiken's creditor got the money by Epping's co-operation—but what did Mrs. Aiken get? Nothing, except a wife's happiness at having assisted in extricating her husband out of pressing pecuniary distress. This, no doubt, was much, but it is a kind of compensation with which the law is by no means content. A wife may assist all the world with her means, so that she avoids contracts of suretyship, except her husband. Him, whom she would most desire to help, she must leave to struggle with his creditors as best he can—the law, dreading his influence over her, puts her under disability for her own protection. The language of section 1783 of the Code is as follows:

" The wife is a *feme sole* as to her separate estate, unless controlled by the settlement. Every restriction upon her power in it must be complied with; but while the wife may contract, she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void."

The mere letter of this language may not include the case of a conveyance made by a wife to induce a third person to pay the debt of her husband, or to advance money with which to pay it, but such a case is clearly within its reason and spirit. If the wife can neither assume the debt

nor pay the creditor, she cannot hire another to do so in her stead, using her property to make, or to secure, compensation. She can neither pay nor secure, nor cause to be paid or secured. The statutory condemnation of a sale made to the creditor in payment to the husband's debt, is very strong ; it is "absolutely void." These terms applied by a statute to immoral transactions, such as involve manifest turpitude or corruption, generally import utter nullity, not only as between the original parties, but as between one of these and the successors or privies of the other, whether these latter take with notice or without it, and whether they have paid a valuable consideration or not. And there are instances in which a like construction prevails where only a general policy of the law is to be subserved, apart from considerations of morality. On the other hand, there is a lax sense in which the word void is sometimes used even in statutes, as meaning only voidable. 6 Pick., 486 ; 13 Mass., 515. When this term or any other which has not a fixed and invariable significance is to be expounded, the nature of the case is to be regarded ; and, moreover, the attention must not be confined to a single doctrine of the law, but all the doctrines that bear upon it are to be collated and, if possible, harmonized. Looking first to the nature of the case, it is evident that it is not wicked or immoral for a wife to pay her husband's debts, nor has the general public an interest in her abstaining from so doing. The restraint imposed upon her by the law is solely for her benefit and well being. The rule is economical, not moral ; and its policy is in favor of a class, and not of the public at large. True, the class is a numerous and important one, but married women cannot be said to constitute the public. The public justice, police, order, safety, revenue, health, religion or morality, is not involved in preventing wives from devoting their property to the payment of their husbands' debts. Looking next to the collateral doctrines of the law that ought to be considered in connection with the restrictive legislation which we are construing, the great

Sutton *vs.* Aiken, trustee.

doctrine of protection to innocent purchasers presents itself. *Bona fide* purchasers, for value, and without notice, are generally recognized as occupying a very high stand in courts, both of law and equity. Certainly, the general rule applicable to them is, that when they deal with an apparent owner, clothed with the proper *indicia* of title, derived from the proper source, pay their money and take a conveyance, acting the while in good faith and without notice of any latent infirmity in the title to which they trust, they are unaffected by such infirmity should it afterwards prove to exist. The only other doctrine sufficiently relevant and important to be called upon in this discussion is that of estoppel. No person has a right deliberately to mislead another to the latter's injury. Whoever, being of full age and of sound mind, does so, is responsible for the consequences. Were a married woman incapable in law of conveying her property at all, all the world would be bound to take notice of her disability. But such is not her incapacity; on the contrary, as we have seen, her general power over her own is as ample as if she were a man. She can buy and sell with perfect freedom, from or to the whole world except her husband or her trustee, so that she does it for her own benefit. Now, when she makes a conveyance, such as her ordinary power renders her competent to make, and upon the face of it acknowledges a consideration and the payment of it, not disclosing that her husband's debt was any part of the consideration, or that the whole transaction was not for her sole benefit, and delivers that conveyance to the purchaser, she does an act calculated to mislead any person to whom the purchaser may offer the property for sale, and to whom her conveyance may be exhibited as evidence of title, if in fact her husband's debt was concerned in the consideration. She deliberately sends forth one accredited as owner, who, as between her and him, is not the owner. If, trusting to the document which she has signed, sealed and delivered, any person should be honestly misled by it, why should she not abide the conse-

quences? If she has been taken at her word, why should she not be required to make her word good, and be estopped from recalling or contradicting her own solemn utterance? Let her be allowed to say that her deed is void, provided she does so in due time, that is, before it has injured any innocent third person; but after it has been trusted and acted upon as being what it purported to be, let her be condemned to perpetual silence. Though an instrument may be "absolutely void," this does not imply that there is no limit to the time within which its void character may be insisted upon. Truth is always precious, but it may become too late to assert it. It may be "more unjust and productive of more evil to hear the truth than to forbear the investigation." Code, §3753. Not always is the consideration of a deed open to inquiry, but "when the principles of justice require it." *Ib.*, §2690. Our conclusion is, that a conveyance amenable to section 1783 of the Code is "absolutely void" as between the maker and all persons affected with notice, but that a subsequent *bona fide* purchaser, for value, and without notice, is protected. Compare 60 *Ga.*, 29.

3. Is the evidence in the record sufficient to affect Sutton, the vendee of Epping, and defendant in the ejectment, with notice? We think so, clearly. He was warned before he either paid his money or took a conveyance, that Mrs. Aiken was still the owner. This, without more, was enough to put him on inquiry into the facts, and whatever would do that constitutes notice. Code, §2790.

Judgment affirmed.