## BALL *vs.* POWERS.

1. While negotiable paper drawn, delivered and accepted on Sunday, is void between the parties, yet, if it is falsely dated as of another day, and comes to the hands of an innocent holder who takes it for value, without notice, and in the due course of trade, the acceptor is estopped in a suit against him by such holder.

2. Where the pleadings make the issue of void or not void, and the plaintiff, claiming to be a *bona fide* holder, adduces evidence expressly in denial of notice, the defendant may insist on the general circumstances of the transaction as tending to prove notice, and the court may charge the jury on the subject, though there be no plea alleging notice in express terms, the plea of the general issue, besides several special pleas, being in.

3. The Code, in section 3960 declares, "If there are several pleas filed by the defendant, a verdict for the defendant must show upon which of the pleas the verdict is rendered. The jury may render such verdict upon all the pleas if they see proper so to do." There being four distinct pleas to the action, to-wit: the general issue, illegality in the instrument declared upon, in that it was made and negotiated on Sunday, fraud against the bankrupt law, and payment, the court charged the jury that if the instrument was made on Sunday and the plaintiff knew it, then they would proceed no further with their investigations, but their duty would be to find for the defendant. No plea was designated on which to render the verdict. In concluding the charge on the whole case, the court further instructed the jury that if they found for the defendant, they would simply say, "We the jury find for the defendant," and such was the finding, the verdict rendered being in that language.

*Held,* on a motion by the plaintiff for a new trial, that the verdict construed in the light of the charge of the court, was contrary to the above cited section of the Code.

*Held,* also, that the charge was erroneous in directing the jury to proceed no further, whilst any of the pleas remained to be disposed of, and in not pointing out what plea to rest the verdict upon, in case the jury chose to restrict their investigations to the Sunday ques-

tion alone, it being apparent from the conclusion of the charge that the court meant the same form of verdict to be used whether the finding for the defendant was upon that one question, or upon some or all of the other defenses pleaded.

4. That the verdict fails to designate the plea on which it is found, or to declare expressly that it is found on all the pleas, is not cause for arresting judgment.

Contracts.   Sabbath.   Negotiable instruments.   Charge of Court.   Pleadings.   Verdict.   Practice in the Superior Court.   Arrest of judgment.   Before Judge CLARK.   Fulton Superior Court.   April Term, 1878.

Ball brought complaint against Powers upon two drafts for $5,000.00 each, dated the 27th of November, 1875, drawn by West, Edwards & Co., on Henry R. Powers, to the order of Shelton Edwards, accepted by Powers, and indorsed by Edwards in blank, due respectively at sixty and ninety days. The acceptance and the indorsement were both undated. Powers pleaded the general issue, and specially as follows:

1st. The bills were drawn in the ordinary calling of West, Edwards & Co., on the Sabbath day, and then and there by him accepted, and then and there transferred to Ball, in pursuance of the ordinary calling of West, Edwards & Co., the said transfer not being a work of necessity or charity.

2d. The bills were drawn on Sunday, the 28th of November, 1875, in part payment of goods bought before that time by him from West, Edwards & Co., and transferred by them to Ball on that Sunday, in settlement of a debt due by them to Ball; a few days thereafter West, Edwards & Co. were adjudged bankrupts upon their own petition; their assignees were appointed and qualified, and claimed that Powers owed them (the assignees) for said goods, filed a bill in the superior court of said county to compel him to turn over to a receiver of said court all said goods, and the proceeds of those sold; the receiver was appointed, took the goods, and upon his refusal to pay the money for those sold, the receiver obtained an order *nisi* to attach him for

contempt ; he defended the same by able counsel, his answer was adjudged to be insufficient, and a verbal order to attach him for contempt was made. He procured time for further answer, but upon telling his counsel the facts aforesaid, they informed him that the bills were void, and that he had better settle with the assignees. Ball told him that he had settled with said assignees and transferred said drafts to them, and that he (defendant) would have to settle with them ; and thereupon he made a settlement with said assignees, paying them $11,000.00 in cash and merchandise for the same goods for which said drafts were given. Edwards, one of said firm, and its managing partner financially, was Ball's nephew, and intimate with him. On said 28th of November, 1875, said firm was insolvent, and within two months before filing their petition in bankruptcy, and this transfer was made to prefer Ball to their other creditors, Ball then and there having reasonable cause to believe that said firm was insolvent, and knowing that said bills of exchange were so transferred in fraud of the provisions of section 5728 of the Revised Statutes of the United States, and said bills rightfully belong to said assignees, and not to Ball.

3. Said drafts belonged to said assignees, and the defendant paid them to the assignees on the 24th May, 1876.

The testimony introduced on the trial was, in substance, to the following effect:

The 27th of November, 1875, was Saturday. There was no evidence of the consideration of the acceptances, nor that they were drawn on Sunday the 28th of November, 1875, but that of the defendant. He swore that he and Edwards were alone when they were given, and it appeared that Edwards, for two years before the trial, was in parts unknown. There was nothing to the contrary but their dates, defendant's interest in the result of the litigation and his answer to the assignees' bill.

As to the transfer to plaintiff on the Sabbath, the evidence of West showing that fact was met by the admission of plaintiff that they were handed to him on Sunday, as West de-

clared, but stating that he asked time for consideration, and had Edwards then and there to take them and lock them up in the firm's safe, till he could decide, and that he subsequently got them. This was corroborated by Carroll's evidence.

As to the consideration of the transfer, it was shown by plaintiff, West, and other evidence, that for a long time plaintiff had advanced the firm money at divers times and in large sums, taking from the firm their notes on their customers as collateral security, and as such notes matured giving them up to the firm upon the substitution of others in their stead, and that these notes so sued upon were so substituted for others which he had held for money advanced to them months before their date.

It was shown that West, Edwards & Co. sold groceries. Defendant testified that he gave these bills for groceries.

It was proved that West, Edwards & Co. were adjudged voluntary bankrupts on the 9th of December, 1875 ; and various circumstances were shown to induce the belief that plaintiff knew, or had reason to know, of their insolvency when he took the paper, such as his being Edward's uncle, keeping his office at the store of the firm, being intimate with Edwards, and having been, just before the failure, locked in their office in close consultation with him.

Plaintiff denied all such knowledge, and endeavored to explain the alleged suspicious circumstances.

As to defendant's payment, it appeared that, being about to be imprisoned, as detailed in his plea, he settled with the assignees for the goods for which he says these notes were given ; and he testified to what may be construed into the statement of his belief that plaintiff had then settled with the assignees, and authorized him to pay them the amount claimed by him on these drafts. Plaintiff swears to the contrary.

The charge of the court was upon all the points made by the pleadings and evidence. It contained no direction as to the form of the verdict, except that it should be for defend-

ant generally, or for plaintiff for the principal, interest and cost, specifying amount, etc. The verdict was for the defendant.

A motion in arrest of judgment was made, because the verdict was illegal in this—that there were several pleas filed by the defendant which were submitted to the jury, and evidence on each plea introduced by defendant and plaintiff, whilst the verdict was generally for the defendant, and does not show upon which of the pleas it was rendered.

A motion for new trial was made, on the following grounds:

1-2-3. The verdict is contrary to evidence, the weight of evidence and the principles of justice.

4th. It is illegal, for the reason stated in said motion, for arrest of judgment.

5th. The court erred, in its charge to the jury, in adding that portion after and including the word "unless," as follows:

"But the party claiming the right to collect these papers is no party to the papers. His name appears nowhere on them. Then, so far as the papers themselves are concerned, as regards their making, they cannot be held to be void as against him, unless you believe, from the evidence, that he knew when he took the notes that they were made on Sunday;" there being no plea and no evidence before the jury to authorize such addition.

6th. The court erred in the following charge, which was given immediately after that above set forth:

"Since, if you believe from the evidence in the first instance, that the notes were executed on Sunday, and when Ball took them he knew they were executed on Sunday, then you will proceed no further with your investigation, but your duty, under the law, will be to find for the defendant;" there being no plea and no evidence to authorize the charge.

Both motions were overruled, and plaintiff excepted.

McCay & Trippe; N. J. Hammond, for plaintiff in error, cited, on illegality of verdict, Code, §3560; 60 *Ga.*, 131; *Rabun vs. Rabun*, August term, 1878. Verdict not demanded by evidence, hence error of court requires new trial, 37 *Ga.*, 219; 47 *Ib.*, 73; 50 *Ib.*, 203; 57 *Ib.*, 81; 58 *Ib.*, 536, 596. Drafts not being dated on Sunday, if plaintiff took before due, they were valid, Code, §2785; 59 *Ga.*, 683; 50 Maine, 84; Jones *vs.* Bailey, Cent., L. J., January 26, '77, p. 89.

P. L. Mynatt; Jno. D. Cunningham; George C. Spann, for defendant, cited, on illegality of verdict, *Rabun vs. Rabun*, Aug. 27, 1878; 1 Archbold's Nisi Prius, 52; 10 Bacon's Ab., 309, "Verdict"; 8 Watts, 37; 3 Chitty's Gen. Prac., 921. Note made on Sabbath void, 41 *Ga.*, 449; 59 *Ib.*, 683; 14 N. H., 133; 1 Parson's on Notes and Bills, 276; 21 *Ga.*, 195; 1 Taunt., 136; 5 Viner's Ab., 507; 1 Binney, 118; 5 Ala., 467; 1 Dan. on Neg. Ins., 55. Immaterial error no ground of new trial, 59 *Ga.*, 254, 454, 473.

Bleckley, Justice.

1. The drafts were negotiable paper, and bore date upon a day of the month corresponding to Saturday. If they were in fact executed on Sunday, they were void as between the original parties; and that they were thus void might be shown, also, against any holder affected with notice. But if Ball purchased them before maturity, and took them for a valuable consideration, in the due course of trade, and without notice of their immoral taint, the acceptor, having accepted upon Sunday, with no correction of the false date, and no indication of the true time of the acceptance, is estopped from urging in defense of a suit against him by Ball that the drafts were drawn and accepted on Sunday. If, indeed, as is pleaded and attempted to be proved, Ball's contract of purchase was also a Sunday contract, then it was not in the due course of trade, and he would not be protected. Sunday is not a day for conducting trade in its due

course; and dealing upon that day, in negotiable paper in ordinary business, so far from being favored, is a breach of the penal laws. Ball testifies that his title is pure; and if it is, there is a manifest justice in holding the acceptor to the date of the drafts, whether the date be true or false. This does not trench upon the rule that a Sunday contract is void; it only excludes the acceptor from treating these drafts as Sunday contracts after he has given currency to them as Saturday contracts, and with no timely disclosure that they were other than what they purported to be. It makes their date conclusive evidence that they were Saturday contracts, and not Sunday contracts. The defense that a party's own act is void may be outlawed by the doctrine of estoppel, to protect innocent purchasers and prevent fraud. The term void, does not always import utter nullity. See *Sutton vs. Aiken*, this term.

2. The court did not err in instructing the jury on the effect of notice to Ball, although there was no plea expressly alleging such notice. Ball himself went into the question of notice in his testimony, denying that he had any. There were circumstances tending to show that he had, and we take it for granted that these were urged in argument. The plea of the general issue was in, and if the plaintiff thought proper to moot the question of notice by his own evidence, the defendant could meet him on that plea alone. If the plaintiff had wanted to keep down the question of notice, until it was pleaded specially, he should have introduced no evidence directly upon the point. Doubtless, correct pleading under our system would require that notice should be alleged, and because it was not alleged, the defendant may not have had the right to go into it if the plaintiff had kept out. But after the plaintiff had gone in, the defendant had a right to follow, and the court, seeing them both in, might well bring up the rear with an appropriate charge on the subject.

3. The Code is express that if there are several pleas the verdict, when for the defendant, should specify some one

or more, or else be rendered upon all.   A mere general finding for the defendant is not a strict compliance with this provision, for the jury ought to say that it is upon all the pleas, or else that it is upon certain of them, pointing these out.    The charge of the court was in conflict with this provision, and so was the verdict, construed in the light of the charge.    The matter is presented pretty fully in the third head-note, and is plain enough to need no elaboration.

4. While we rule that the form of the verdict, together with the instructions from the bench which dictated the form, is cause for a new trial, we are not to be understood as holding that a new trial would follow if the instructions had been correct.    Much less can we hold that there was error in overruling the motion in arrest of judgment.  Judgment will not be arrested where it is clear that the jury meant to defeat the plaintiff's action, and nothing is more clear than this in the present case.   Where the court has not told the jury how to shape their finding, and the verdict ought to specify one or more of the pleas, or else be based expressly on them all, the proper practice is to move to remand the jury for the purpose of making the verdict speak with proper fullness.    But where the court has instructed, and the jury have obeyed, counsel may be silent and then ask for a new trial.

Judgment reversed.