PERKINS vs. ROWLAND.

1. The failure to pay costs and give bond, or to file a proper affidavit *in forma pauperis* in lieu thereof, on excepting to the judgment of the court below, will not deprive this court of jurisdiction. Where such bond is given or affidavit filed, it operates as a supersedeas; in the absence thereof, the opposite party is at liberty to proceed to enforce his rights in the court below by execution or otherwise, subject to the chances of a reversal. If costs are not paid, execution may be issued therefor.

(a.) Where a pauper affidavit is filed which does not conform to the statute, counsel for plaintiff in error is liable for costs taxed in this court.

2. While a wife cannot legally assume a debt of her husband, yet where she has given a negotiable note for his debt, and it has been transferred to a *bona fide* purchaser for value before due and without notice, it is valid and binds her.

December 12, 1882.

Husband and Wife. Promissory Notes. Contracts. Before Judge SNEAD. Burke Superior Court. May Term, 1882.

Reported in the decision.

H. E. W. PALMER, by brief, for plaintiff in error.

HARPER & BROTHER, by W. T. DAVIDSON, for defendant.

SPEER, Justice.

1. A preliminary motion was made in this case to dismiss the writ of error, on the ground that the pauper affidavit, filed by the plaintiff in error in the court below to entitle her to the writ without paying the costs and giving the bond, etc., was not in conformity with the act of the general assembly, approved 27th September, 1881, (see acts 1880–1, p. 120), regulating the form of the pauper oath in carrying cases to the Supreme Court. This act

declares: "Such oath shall state that the plaintiff in error because of poverty, is unable to pay the costs in said case, without stating conjunctively the inability of the plaintiff in error to give bond for the eventual condemnation money." The record here shows that the plaintiff filed her affidavit, stating "that she is unable, from her poverty, to pay the costs and give the security." It will appear that her affidavit is not in comformity with the recent act above quoted; but is this good cause to dismiss the writ of error? The statute, it is true, requires the plaintiff in error to enter into bond and pay the costs, or else, in lieu thereof, file the affidavit. But the failure to do so does not deprive this court of jurisdiction to hear the cause. This failure to pay costs and give bond, or file an affidavit, simply denies the complaining party a supersedeas to the judgment below, and nothing more. The giving of bond and security upon carrying up of cases to the Supreme Court, is optional, not compulsory. Where no bond is given, or affidavit filed, the opposite party is at liberty to proceed to enforce his rights in the court below by execution or otherwise, subject, of course, to the chances of a reversal. 1 *Kelly*, 1.

Neither will the writ of error be dismissed because the record does not show that the costs in the court below have been paid. If the costs are not paid, the defendant in error may cause execution to issue, and proceed at once to make it in the court below. 6 *Ga.*, 587. As the giving bond, or payment of costs, was not a condition precedent, which the record must show before we could take jurisdiction of the case, much less would the failure to file a pauper affidavit, whether perfect or not, operate to dismiss the writ from this court. Where, however, the pauper affidavit is defective, as in this case, the counsel for plaintiff in error is liable for the costs here taxed. Motion overruled.

2. This was a petition filed by the defendant in error to foreclose a mortgage on certain real estate situated in Burke

county, which it was alleged the plaintiff in error had executed to secure the payment of a certain note made by her. The petition is brought in the name of the plaintiff as transferee and bearer of the note and mortgage sought to be foreclosed. It is alleged that the note and mortgage were made and delivered to one Chesley Toler, who, in due course of trade, for value and before due, transferred both note and mortgage to petitioner. The note was a negotiable paper upon its face.

To this petition defendant filed her plea of general issue; and further, that the note and mortgage were given to C. Toler, the payee, as security for a debt of her husband, George C. Perkins, and that the same is, therefore, illegal and void ; that her husband owed said Toler for a mule, and this note and mortgage were given by her to secure said debt of her husband's. To this plea plaintiff below demurred, on the ground that it failed to set forth the fact that the plaintiff took the note sued on with notice of the fact that the same was given as a security for the debt of her husband. The court sustained the demurrer and struck the plea, and plaintiff in error excepted. The question made by the record is, can a married woman set up this defence to a holder of a negotiable security, who buys it *bona fide* for value, without notice and before due ? While the wife may contract, she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband. But how is she affected as to such a contract when it passes into the hands of a *bona fide* holder without notice ? What are the rights of a *bona fide* holder of negotiable securities ? For her rights of defence must also be construed in reference to his. A *bona fide* holder of such a paper before due, for value, and without notice, is protected from any defences set up by the maker, acceptor, or endorser, except *non est factum*, gambling, or immoral and illegal consideration, or fraud in the procurement of the contract. It is not claimed that this is a gambling contract ; it is not claimed that it is an

immoral contract, but it is insisted it is an illegal contract. But to set up this defence against such a holder, the rule is, it must be immoral and illegal. It may be illegal without being immoral; but the consideration, to make the defence available, must be both immoral and illegal. We cannot say, when a wife chooses to assume the debt of her husband, she is moved by an immoral consideration. While she is doing under the law what she is inhibited from doing, the law imposes no penalties upon her; on the other hand, it only interposes to save her from the folly of the act. This court ruled in the case of *Meadow vs. Bird*, 22 *Ga.*, 246, that a note given upon an illegal consideration, because contrary to public, policy though voidable in the hands of the payee, is valid in the hands of a *bona fide* holder for value, before due and without notice. So also it was held a negotiable paper, drawn, delivered and accepted on Sunday, while void between the parties, yet is good if it is falsely dated and comes into the hands of on innocent holder. 62 *Ga.*, 757.

The case of *Johnson Brothers & Co. vs. McConnell et al.*, ˉ65 *Ga.*, 130, relied upon by plaintiff in error, was one in which the contract was not only illegal, but also immoral, because in violation of a penal statute.

The presumption of law is, that in this case the defendant in error took this note and mortgage for value before due and without notice; 61 *Ga.*, 208; 60 *Ib.*, 90; and therefore, to meet this presumption, the defendant, in setting up her defence that she was not liable because she had made this contract contrary to law, must both aver and prove that this defendant in error either traded for this note after due, or else that he took it with notice that the consideration was illegal.    .    .    .

When a married woman gives her individual note, the presumption of law is that she gave it on her own contract and for value, to charge her separate property; and when she makes such a contract apart and independent of her husband, and one takes it *bona fide* and with-

out notice, before due, he stands as to her like all other innocent holders.

In our judgment the court did not err in sustaining the demurrer.

Judgment affirmed.