## TEMPLES *v.* EQUITABLE MORTGAGE CO.

Where a married woman has executed a note and mortgage to secure the payment of a sum which, from the recitals in such note and mortgage, appears to have been loaned to her and upon the faith of her separate estate, she is not entitled to impeach the transaction by showing that the papers were executed to secure the payment of her husband's debts and not her own, unless she alleges in her plea and proves that at the time of their execution the lender knew that the transaction was merely colorable, and was a scheme or device by which her own property was pledged to the payment of the debt of her husband.

Argued February 22,—Decided March 8, 1897.

Complaint.   Before Judge Felton.   Bibb superior court. November term, 1895.

*Chambers & Polhill*, for plaintiff in error.

*Dessau & Hodges* and *Payne & Tye*, contra.

LITTLE, Justice.

The record shows that the plaintiff in error made an application in writing to the Georgia Security Investment Company to negotiate for her a loan of twelve hundred dollars, and proposed to secure the payment of that loan by a mortgage on certain real estate in Baldwin county.   The application contained certain statements and representations concerning the nature and value of the land, made for the purpose of securing the loan.   Among these were, that there were no judgments or other liens except a mortgage; that she had no indebtedness other than this; that she was the wife of John T. Temples.   A written affidavit of the truth of the statements in the application was made by the

plaintiff in error, and attached.    Accompanying these papers was also an agreement, constituting the investment company her agent to negotiate a loan of twelve hundred dollars on five years time, bearing interest at six per cent. per annum, and prescribing the nature of the note and mortgage to be executed by her.    In this she agreed to pay the investment company two hundred and twenty-eight dollars as commissions to negotiate the loan.    She also authorized her agent to pay off all liens on the property, which she recited to be $1,000.    These papers all bore date March 29th, 1889.    The record also contains copy of a promissory note for $1,290 principal, and coupons for interest made to the Equitable Mortgage Company, dated April 17, 1889, signed by plaintiff in error; also, copy of a deed conveying title to the land described in the application, to secure payment of the note; also affidavit of the plaintiff in error, to the effect that the money received by her on the loan negotiated by the Georgia Security & Investment Company is for her sole use and benefit, and is not to be used in payment of her husband's debt.    Copy of the check for the money, payable to R. W. Roberts, agent of Sallie Temples, follows; also a receipt for $1,290, less commissions as agreed, from the Georgia Security & Investment Company, signed by plaintiff in error. The evidence showed that the loan was negotiated through the investment company with the Equitable Mortgage Company as the result of the application made by plaintiff in error.    The mortgage company brought suit on the note, and prayed a general judgment against the defendant and a special judgment against the land.    The plaintiff in error demurred to so much of the petition as prayed for a special judgment against the land, on the ground that it was situate in Baldwin county and the superior court of Bibb county had no jurisdiction to grant a special lien thereon.    The demurrer was overruled, and exception pendente lite taken. Beside demurring to the petition, the plaintiff in error by answer denied indebtedness, admitted the execution of the

note, and averred that it was given to the plaintiff for the loan of $1,290 to her hand; that she never contracted for the loan of any sum in consideration of the note, nor did she receive the money mentioned in the note from plaintiff or its agents, but the note was executed for money which her husband said he had borrowed; that the deed was executed to secure an indebtedness of her husband; that no consideration passed to her; that she never contracted any indebtedness to plaintiff; that the land was her separate property; and prayed the deed should be cancelled. On the trial plaintiff introduced the note and deed. Mrs. Temples testified for herself, that she executed the note and deed; was the wife of J. T. Temples at that time; that she signed the application, agreement, affidavit, etc., which were introduced by the plaintiff. Verdict was for plaintiff. A motion for new trial was made on the general grounds; because the court erred in overruling the demurrer; because the court refused to permit Mrs. Temples while a witness to testify as to the time, and the purpose she had in signing the application for the loan; because the court erred in refusing to allow Mrs. Temples to testify whether the loan was procured by herself or her husband, her husband having died before the trial; because the court erred in refusing to allow her to testify as to whether Roberts was her agent, or whether the money was loaned to her or her husband. The motion for new trial was overruled; defendant excepted.

In the argument here the main ground of error insisted on was the refusal of the court to allow the plaintiff in error to testify as set out in the motion for new trial. In effect the answer to the petition set up the defense that the loan for which the note was given was a debt of the husband and that her separate estate was not liable therefor, notwithstanding she had signed the note, nor did the plaintiff take any title under the conveyance made by her to secure said note, because it was to secure such debt of the husband. The issue made, therefore, was whether the debt was the wife's,

who made the application and executed all the papers, or that of her husband.

It was not denied that the plaintiff in error signed the application for the loan, that the property described was her separate estate, that she made an agreement with the investment company to allow it a given commission to negotiate the loan applied for, and appointed a third person her agent to receive the money for her. And it appears from the record, that on this application the company negotiated the loan for the plaintiff in error, and that she made affidavit that the loan was for her sole use, and not for the use or benefit of her husband; and she also executed the note payable to the defendant in error, and secured it by a conveyance of her real estate, according to the terms of the application. The answer to the petition fails to allege that the company lending the money had any notice, actual or constructive, that the money sought to be borrowed was for the husband.

It must be remembered that by the statute a married woman is vested with the powers of a feme sole as to her separate estate, with only certain named restrictions. She cannot bind such estate by any contract of suretyship, nor by any assumption of the debt of her husband; a sale of her separate estate to a creditor of her husband in payment of his debt is void. Other than as thus excepted, she has been vested with power to contract as to her separate estate. Notwithstanding the statute declares her acts within the prohibited limits *absolutely void,* this court has repeatedly held, in construing the statute, that in the hands of a bona fide holder for value, who purchased the same before due, without notice, her contract made within the forbidden limit is valid as to such purchaser, and binds her. *Perkins* v. *Rowland,* 69 *Ga.* 661; *Strauss* v. *Friend,* 73 *Ga.* 782. In *Sutton* v. *Aiken,* 62 *Ga.* 733, is an able argument on the rights of married women to contract with reference to the restrictions imposed by the statute. There, Bleckley, Justice, speaking for the court, says: "Our conclusion is, that a con-

veyance amenable to section 1783 of the code [Civil Code, §2488] is absolutely void as between the maker and all persons affected with notice, but that a subsequent bona fide purchaser for value and without notice is protected."

When a married woman gives her individual note, the presumption of law is that she gave it on her own contract and for value, to charge her separate property. *Perkins* v. *Rowland*, 69 Ga. 664. This being the legal presumption, it is not a sufficient defense to aver that it was given for the husband's debt. It may have been so given, and yet, as we have seen, if it for value, before due, go into the hands of one who is not charged with notice and who has no notice of its inherent defect, it is good in his hands. In the case at bar, the husband appears nowhere in the transaction; the wife has a separate estate; she made a written application to a third party to negotiate a loan for her, and agreed to pay a certain commission for his services. She made her individual note and secured its payment by a deed conveying title to her separate estate,—all this she had a perfect legal right to do; she appointed an agent to receive the money for her; she attached an affidavit that the money was for her sole use and benefit, and was not to be used in payment of any debt of her husband or in any manner for his use and benefit. She gave her receipt for the money according to the terms of the contract. When suit to recover the amount of the note is instituted, her plea is made that it was given for a debt of the husband. This does not go far enough to set up a legal defense. If it were so, and the money were lent on the faith of her promise to pay, by one who had no knowledge that it was an assumption of a debt of the husband, she would be bound. On the face of the contract it is her debt, her paper. Prima facie it is a contract she can legally make. In order to successfully defend and avoid liability she must go farther and charge notice on the holder of the note. "A plea to the effect that the note was given by the wife for the debt of the husband, but which did not

.allege that the plaintiff had received the note after maturity or with notice, was fatally defective." *Perkins* v. *Rowland*, .supra.

Under the pleadings, proofs and admissions as they stood at the trial, the purpose of the wife in signing the application—whether the loan was procured by her or her husband, whether it was loaned to herself or her husband, were inadmissible; so far as the face of the papers showed, it was her debt, and the loan made to her. If the loan was procured by the husband, or for him, the plea must not only set out that fact, but charge the holder with notice, in order to overcome the legal presumption of the legality of her contract.

The evidence sought to be introduced, however, is inadmissible from another point of consideration. The application, agreement, appointment of agent, affidavit that the loan was granted for her sole use, note, deed, and receipt for the money were all in writing, signed by the wife, and in evidence. When the court refused to allow her to answer the questions propounded, these instruments spoke for themselves and were not ambiguous, and were all part of the contract. Why was not the plaintiff in error estopped from denying the representations and terms of these instruments which she had executed and delivered? Counsel for plaintiff in error insists that she is not estopped now from contradicting these written statements, and cites as authority the case of *Dunbar* v. *Mize*, 53 *Ga.* 435. In that case William Mize and his wife executed a mortgage on land to secure a note given by William Mize, the husband, to Dunbar & Co. The mortgage recited that the note was given in payment for merchandise which went to the use of Mize and wife. On foreclosure proceedings, the wife set up as a defense, that the note was the debt of the husband, that she derived no personal benefit from the consideration, and by the mortgage she was in effect giving a lien on her separate .estate to secure his debt. Plaintiff claimed that defendant

was estopped from denying recital in mortgage as to consideration of the note. The court held she was not. Without undertaking to review the decision in that case, it is sufficient to say that we are not prepared to hold it was wrong, nor irreconcilable with our construction of the law in the case at bar. In the *Mize* case the husband gave his *individual* note to Dunbar & Co. It was his debt. Dunbar & Co. knew the consideration, accepted the husband as the debtor. Subsequent to the execution of the note, the husband and *wife* executed a mortgage to secure same note, on the separate estate of the wife, and placed in the mortgage a recitation that merchandise which went to the use of husband and wife was the consideration of the note. It could not, however, be made to appear that Dunbar & Co. *acted on the recitals in this mortgage*, because the note was given antecedent to the execution of the mortgage. No fraud could have been committed on the firm by recitation in the mortgage, because they were in no way hurt in their debt by taking the security; it was their only security. The court held in that case that the wife was not estopped by this recital from showing that the same was untrue, and that the debt was wholly the husband's debt. It also held, "If it had appeared that this recital misled the mortgagees and that they acted to their hurt on the faith of it, there might be some ground for an estoppel in pais, as a woman—even a married one—cannot commit a fraud with impunity." The principle here is different. The application, agreement, affidavit, note and mortgage were what the defendant in error acted on in making the loan. If the evidence of the plaintiff in error was admissible, then it would appear that the lender acted to its hurt on the faith of the representations, and here is made applicable the doctrine of estoppel in pais. Herman, in the 2d volume of his law of Estoppel and Res Judicata, page 1246, lays down the rule that a married woman's estate may become bound by a participation in fraud, as where a mortgage is obtained upon

property of the feme, on the false representation made by her that she owned the absolute interest in the estate. . . That if a married woman, free from all constraint and with a full knowledge of her rights, should represent that a certain tract of land was not her homestead, and then cause a person to purchase it, she would be concluded by her acts. . . These admissions, whether of law or of fact, which have been acted on by others, and which were calculated to influence a prudent man, and which were the cause of another's actions, and which were deliberately and knowingly made, are conclusive against the party making them, in all cases between him and her, and the person whose conduct was thus influenced"; and further, on page 1247, he says: "Whatever may be the rule concerning the formalities needed to bind married women, there is no doubt they may be estopped by their deliberate conduct, as well as any one else," citing 4 Ch. App. pp. 35 and 591; and again on page 1248, same volume, he cites 53 N. Y. 993, and 50 Wis. 200, for the doctrine that married women, to the extent and in the matter of business in which they are by law permitted to engage, owe the same duty to those with whom they deal and may be bound in the same manner as if unmarried."

Passing on the statute affecting the contract powers of married women, the court, in the case of *Sutton* v. *Aiken*, heretofore referred to, say: "If, trusting to the document which she has signed, sealed and delivered, any person should be honestly misled by it, why should she not abide the consequences? If she has been taken at her word, why should she not be required to make her word good, and be estopped from recalling or contradicting her own solemn utterance?"

When a married woman borrows money and by her conduct or representations induces the lender to suppose she is borrowing the money for her own use, when in fact her real purpose, unknown to the party with whom she is deal-

ing, is to obtain the money for her husband, she will be estopped from denying that which she herself had induced the lender to believe was true. 13 S. E. Rep. 357.

From any view which we take of this case, we are constrained to hold that there was no error in refusing the new trial by the court below. There was no error in sustaining the demurrer to that part of the petition which prayed for a special judgment against the land lying in Baldwin county. Title to the land was not affected by this prayer—the prayer was for a judgment against it. The superior court of Bibb county, having jurisdiction of the person of the defendant below, could properly and lawfully render a judgment against her, binding her property generally, or specially as prayed for in this case.

*Judgment affirmed. All the Justices concurring.*