### 4773.  COPELAND *v.* McCLELLAND.

1. The amendment to the defendant's answer set forth a good defense to the action and was not subject to any of the demurrers filed thereto.
2. An affidavit attached to an amendment to an answer, in which the affiant avers that he did not discover the new facts set forth in the amendment until after the original answer was filed, and that if he had known of such facts at that time he would have pleaded them, is a substantial compliance with the provisions of section 5640 of the Civil Code.
3. In a suit upon a promissory note, purporting to have been signed by the defendant, who was a married woman, the burden is upon her to establish the truth of special pleas that the note was given in settlement of a debt of her husband, and that the consideration of the note had wholly failed. Where the evidence is conflicting upon the issues thus raised, it is prejudicial error to charge that, if the evidence in the case is equally balanced, the jury should find for the defendant.

DECIDED JUNE 10, 1913.

Complaint; from city court of Cairo—Judge Singletary. January 25, 1913.

*R. C. Bell, J. S. Weathers,* for plaintiff.

POTTLE, J.  This was a suit against a married woman, upon a promissory note for $240 principal, with a credit thereon of $55. The note purported to have been signed by the defendant with her mark.  She pleaded non est factum; that she was not indebted to the plaintiff in any sum; and that she borrowed from him $50 and gave him her note for that amount, and paid the note in full, both principal and interest.  By amendment she alleged, that prior to the execution of the note, her husband agreed to trade horses with the plaintiff and give him $150 boot, which agreement was unknown to her, and that two or three weeks after the agreement was entered into and when she went to give the plaintiff her note for the $50 which she had borrowed from him, the plaintiff included in the note, without her knowledge or consent, the $150 due by her husband; that she is an ignorant woman and can neither read nor write.  She further pleaded that the con-

50

sideration of the note had failed because the horse received by her husband was totally worthless; that the plaintiff took it back and let her husband have another, which was as worthless as the first one, and that the plaintiff finally took the second one back without returning the one the plaintiff had received from her husband, or allowing him anything therefor; and that she has never owed the plaintiff but $50, which she borrowed from him and which she has paid. Annexed to this amendment was an affidavit verifying the truth of the allegations in the amendment, and stating that the defendant did not know of the defense at the time the original answer was filed; that she knew that she had borrowed $50 from the plaintiff and had given her note for that amount and paid it, but did not know how the note came to be for $240, until she recently found out that the plaintiff had included in the note the amount her husband agreed to pay him as boot in the horse trade; and that, if she had known of these facts at the time of filing her original answer she would have pleaded them. The plaintiff demurred to the amendment, on the ground that it set forth no defense; that it was not alleged that the plaintiff knew that the debt was a debt of the defendant's husband, and it was not denied that the note was read over to her. The amendment was further demurred to on the ground that no affidavit was attached thereto to the effect that in the original plea the new facts set out in the amendment were not omitted for the purpose of delay, and that the amendment was not offered for delay. The demurrer was overruled and the plaintiff excepted.

The plaintiff put in evidence the note sued on, and a mortgage on certain land and a mule, given to secure it, purporting to have been signed by the defendant and her husband (her signature being by mark). The mortgage recited that the mule was that day sold to her, and that the mortgage was for purchase-money, and that the husband signed for the purpose of relinquishing whatever interest he had in the land. She testified, that she had never bought a mule from the plaintiff, had never owed him but $50, and paid him that debt, did not know about any other transaction, and did not know of the $240 note until after the suit was brought, when she learned that her husband had swapped mules with the plaintiff and agreed to pay him $150 boot, which was included in the note; that the note and the mortgage were not read over to her

before she signed them; that some time after the note and the mort-
gage were executed, the plaintiff and one Johnson came to her home
and left with her husband the mule described in the mortgage; that
the mule had some kind of disease, and her husband exchanged it
with the plaintiff for another mule, which was no better able to work
than the first one, and the plaintiff finally took back the last mule
without returning the one he had received from her husband or
allowing him anything therefor; that Johnson came after the last
mule, acting as plaintiff's agent in the matter; and that she could
neither read nor write. Her husband testified substantially to the
same facts in reference to the mule trade, and that Johnson came
and got the last mule which the plaintiff had turned over to him
(the defendant's husband), and the latter never got a mule or any-
thing else in exchange. The plaintiff testified that both the defend-
ant and her husband came to him before the note sued on was given,
and the defendant stated to him that she wanted to borrow $50 and
trade the old mule for another mule which he had and which her
husband had seen and selected; that she stated that the old mule
was hers, and he dealt with her, and never knew her husband in
the transaction, except that he was with her when the papers were
signed and selected the mule which was wanted; that there was
nothing the matter with the mule which he let her have; and that
Johnson was not his agent to sell or trade any mules for him.
Johnson testified that he was not working for the plaintiff at the
time the transaction with the defendant took place, and that he
was never the plaintiff's agent to sell or trade any horses or mules;
that the mule that the defendant got from the plaintiff was a good
mule; that he (Johnson) afterwards traded with the defendant
for this mule; that he and the plaintiff and the defendant's hus-
band went to an attorney's office to find out if it would be all right
to trade for the mule while the plaintiff had a mortgage on it; that
he (Johnson) then traded an old white mule for the one that the
plaintiff let the defendant have; that afterwards the defendant's
husband got dissatisfied and told him (Johnson) that he could have
the white mule, and he (Johnson) thereupon went and got the
mule, but did not represent the plaintiff in the transaction. The
defendant, in rebuttal, testified, that she had never traded mules
with the plaintiff, had never represented to the plaintiff that the

first mule traded to him was hers, and that she had never at any time had a conversation with the plaintiff in regard to any mule or mule transaction. The jury found for the defendant, and the plaintiff's motion for a new trial was overruled.

1. The amendment to the defendant's answer set forth a good defense to the action. It was, in substance, that the defendant was not indebted to the plaintiff; that if any debt was owed, it was by her husband; and that her husband was not indebted, for the reason that there had been a total failure of consideration. The plaintiff contended that the plea was bad because it failed to allege that the plaintiff knew that it was the debt of the husband, and not that of the wife. *Temples* v. *Equitable Mortgage Co.*, 100 *Ga.* 503 (28 S. E. 232, 62 Am. St. R. 326). It sufficiently appears, however, from the plea, that the plaintiff knew that the debt was the husband's, and, without the knowledge or consent of the wife, included in the note which she signed. The principle announced in the *Temples* case, supra, is only applicable when the wife misleads her creditor into a transaction concerning her separate estate, and he deals with her in good faith, without knowledge that she is attempting to pay her husband's debts. No such transaction as this is disclosed by the answer in the present case, and the principle of that decision is not applicable.

2. "Where the defendant is present at the trial, the court can not permit a plea setting up new facts to be filed, without requiring an affidavit that the original plea did not omit such new facts for the purpose of delay, and that the amendment is not now offered for delay." The code provides that, when "the circumstances of the case or substantial justice between the parties require it," the court has the power to allow the amendment without the affidavit. Civil Code, § 5640. The court's discretion, however, must be based upon facts justifying its exercise. If the defendant is present in court and no reason appears why he can not make the oath, it is an abuse of discretion to relieve him from so doing. *Bass Dry Goods Co.* v. *Granite City Mfg. Co.*, 119 *Ga.* 124 (45 S. E. 980). The affidavit in the present case was, however, a substantial compliance with the section of the code. It is not essential that the exact language of the section should be used. In the affidavit attached to the answer in the present case the defendant averred that she learned of the new facts set up in the amendment after the

filing of the original answer, and, if she had known them at that time, she would have pleaded them. This is sufficient to show that the new facts were not omitted nor the amendment offered for the purpose of delay.

3. The following charge of the court is assigned as error: "If, after hearing all of the evidence in this case, you find that the evidence is equally balanced between the plaintiff and the defendant, then you should find in favor of the defendant." This charge was erroneous as applied to the pleadings and the evidence in the present case. The burden was on the plaintiff to prove the execution of the note, and this he did by the testimony of a witness that he saw the defendant sign the note. The defendant made no attempt to sustain her plea of non est factum. The plaintiff having thus made out a prima facie case, the burden was on the defendant to sustain by proof her special defenses that the note was given for a debt of her husband and that the consideration had failed. On these two issues the testimony was directly conflicting. The plaintiff testified that the defendant represented to him that the mule which the plaintiff received was the property of the defendant, and that she desired to exchange it for another mule and pay the plaintiff $150 as boot; that she borrowed fifty dollars from the plaintiff, and these two sums made the principal amount due on the note. The plaintiff further testified that the mule sold to the defendant was sound in every way, and that Johnson was not his agent and had no authority to take back from the defendant the white mule which she took in exchange for the one which she had received from the plaintiff. Of course, if the evidence had required a finding that the plaintiff got the white mule and gave the defendant nothing in exchange therefor, or that Johnson was authorized by the plaintiff to take back the white mule, the verdict for the defendant would have been demanded. But this does not appear. According to the testimony of the plaintiff and Johnson, the last trade was a transaction between Johnson and the defendant with which the plaintiff had no concern. The defendant denied all this, and the verdict in her favor was fully supported by the evidence; but, since it was not demanded, the instruction above referred to requires a new trial. The burden was on the defendant to establish the truth of her pleas. If the evidence on the issues thus raised was equally balanced, the plaintiff was entitled to a verdict upon

the prima facie case which he had made by proof of the execution of the note. The effect of the instruction was that, if the jury were in doubt whether to believe the plaintiff or the defendant, they should find for the defendant; whereas the correct rule was that if the jury were unable to reach a conclusion as to which one of the parties was telling the truth, they should find for the plaintiff, because in that event the defendant would have failed to establish her pleas. For this error alone a new trial is ordered.

*Judgment reversed.*