331   *MARGARET A. O'BYRNE et al., plaintiffs in error, *v.* THE MAYOR AND ALDERMEN OF SAVANNAH, defendants in error.

(Atlanta, June Term, 1870.)

TAXATION—RIGHT TO TAX—MUNICIPAL CORPORATION.—The right of taxation is inherent in the sovereign. So far as it exists in a municipal corporation, it is by grant, and is called a franchise.

SAME—SAME—DE FACTO ·GOVERNMENT — ENFORCEMENT OF ASSESSMENT AFTER OVERTHROW.—A de facto government which is able to maintain its supremacy by its armies may exercise this power, and those who are subject to its control are bound to obedience. But if it assesses a tax and is overthrown before it is collected, the rightful sovereign whose power is established will not enforce such assessment against the subjects of the government dejure.

SAME—PAYMENT TO DE FACTO GOVERNMENT—RECOVERY—OBLIGATION TO PAY.—In such case those who have paid the tax to the defacto government while it was supreme have no means of recovering it back; and those who did not pay till its overthrow, are under no obligation to pay.

SAME—NOTE FOR ASSESSMENT BY CONFEDERATE GOVERNMENT—VOID.—A note given since the war to the Mayor and Council of Savannah, for tax assessed by the city authorities during the existence of the Confederate Government but not collected, is void for want of consideration.

O'Bryne v. Savannah

SAME—NOTE FOR TAX AND GROUND RENT—CONSID-ERATION SEVERABLE.*—A note given for such tax and for ground rent due the city, by contract made prior to the war, is void as to the tax, but good as to the rent. The consideration is clearly severable, as the record shows precisely how much of it was for tax and how much for rent.

Taxation.    Rebellion.    Before Judge Schley.    Chatham Superior Court.    July, 1869.

The Mayor and Aldermen of Savannah held the note of Margaret O'Bryne et al., for $6,502 17, dated the 23d of May, 1867, due one day after date, and secured by a mortgage upon realty. They sued upon the note and sought to foreclose the mortgage. So much of the pleadings and incidents of the trial as are necessary for our purpose are as follows: Said note as to $4,232 55 was void, because it was given in settlement of certain amounts assessed against defendants by plaintiff during 1861, 1862, 1863 and 1864, which taxes were assessed for the purpose on plaintiff's part of aiding and encouraging the then existing rebellion against the United States; and further, that the taxes of those years was used for said purpose, of which the parties had notice when said note was made. By consent the causes were tried together.

*Plaintiffs read in evidence the note and mortgage.

The late city attorney testified that plaintiff neither levied any tax for carrying on said war, nor had increased its taxes or rates of taxation because of the war, and other wit-

See foot-note to Baily v. Milner, 35 Ga. 331.
*CONTRACTS—CONSIDERATION GOOD IN PART AND BAD IN PART—SEVERABLE.—"The plea here is that the consideration is illegal, and therefore that it will not support the two notes sued on; but it is not wholly illegal, we think, but void in part and good in part; and as it is severable, as the usurious part may be purged out, and nothing but the pure money borrowed and the legal interest be left, we think that, under our Code, § 2745, which provides that if the consideration be good in part and void in part and be severable, it may be sustained for the good part, that these notes may be sustained for principal and lawful interest. In this promise there was nothing illegal because there was no law against usury when it was made; but this is precisely a case where the consideration was void in part but good in part. The good part, the righteousness of paying back the money, borrowed always was a good consideration to support a promise to pay that money so borrowed and the lawful interest thereon. We hold it good for that purpose and not illegal in any respect, so as to sustain the plea that the whole new contract, made at a time when there was no law at all against usury, was entirely void. See Stallings v. Johnson, 27 Ga. 571; (O'Byrne v. Savannah), 41 Ga. 333." Houser v. Planters' Bank, 57 Ga. 99.

If a married woman signs a promissory note, the consideration of which is partly her own debt and partly the debt of her husband, the payee can recover in a suit on the note that portion which was based upon the debt of the wife, the amount of her debt and of that of the husband being clearly shown by the evidence. Jones v. Harrell, 110 Ga. 373, 35 S. E. Rep. 690, citing the principal case.

See also, citing the principal case, Hill v. Balkcom, 79 Ga. 444, 5 S. E. Rep. 200; Finch v. Barclay, 87 Ga. 393, 13 S. E. Rep. 566.

nesses testified to the same. Plaintiff also introduced evidence to show the basis of settlement which produced said note. It showed that of the consideration of said note, $4,232 55 was for taxes on defendants' real estate during 1861, 1862, 1863 and 1864, and the balance was for ground rents due the city. Defendants paid no taxes during the war.

For the defendant the evidence on this question was as follows:

A witness said: The printed volume submitted and produced by plaintiff under notice from defendants contain the official reports of the Mayor and Treasurer of the City of Savannah for the years 1861, 1862 and 1863. During these years plaintiff appropriated money to build batteries, to obstruct the Savannah river against the approach of the forces of the United States, for the entertainment of Confederate troops, and to carry on a city store established to keep down the price of provisions. Another witness said: During those years plaintiff appropriated money for the entertainment of Confederate troops, building batteries, obstructing the river against the advance of United States forces, and the support of a city store and a passport office. Do not know what the purpose of the passport office was, but a passport office is not kept here in times of peace. The amount of money needed for the support of the city would have been no less if these appropriations had not been made, for the money would have been spent for something else.

Defendants then read in evidence the following portions of the printed reports of the Mayor and Treasurer for the years 1861, 1862 and 1863, and of the manuscript book containing the Treasurer's report for 1864:

## MAYOR'S REPORT FOR 1861.

The expense attending our police organization this year, including the payment for their horses, $45,696 26. In addition *to the regular duties required of them under the Ordinances, members of the police force, in compliance with a resolution adopted by Council, have been for several months exercised one hour each day in the heavy infantry drill. Muskets obtained for this purpose from the State are now in possession of the police force. With these arms, effective service will be rendered whenever the emergency may demand.

### INCIDENTAL EXPENSES.

The session of the State Convention (by request) in our city.
The cost of furnishing our volunteer companies with ball
cartridges .................................................
Appropriation to Pulaski Guards, now in Virginia........
Expenses of Committee to visit sick and wounded of Oglethorpe Light Infantry, Virginia....................
Total.................................. $8,344 32

### CITY TREASURER'S REPORT FOR 1861.

Paid ball cartridges for volunteer companies............. $ 366 50

| | | |
|---|---|---|
| Paid Committee to visit the sick and wounded, Oglethorpe Light Infantry, in Virginia | 282 | 80 |
| Paid hire Masonic Hall for use of State Convention, Excursion to Fort Pulaski and collation on board | 1,078 | 00 |
| Paid hire of Savannah Atheneum for Hon. A. H. Stephens to address the people | 50 | 00 |
| Paid appropriation to Pulaski Guards, Virginia | 160 | 60 |

### MAYOR'S REPORT FOR 1862—INCIDENTAL EXPENSES.

| | | |
|---|---|---|
| Amount of relief offered to the families of soldiers and the poor generally in our midst | $5,280 | 05 |
| Cost of refreshments to soldiers passing through the city, on their way to the scene of action | 693 | 43 |
| Paid salary of passport office, and other expenses connected with this office | 1,305 | 10 |
| Paid ammunition for use of the military, and for work performed by free men of color, on Green Island | 497 | 53 |

### WAR EXPENSES.

The danger of invasion by way of our river, being imminent, therefore the following expenditures were incurred:

| | | |
|---|---|---|
| *Paid for preparing and sinking the brig Santa Clara, ship Sebasticook, and ship A. B. Thompson, in the Savannah river, so as to obstruct the channel | $ 386 | 60 |
| Paid labor constructing batteries on Savannah river, per advice of General Lee | 2,990 | 00 |
| Paid for forty muskets for the use of the military | 960 | 00 |
| Total | $4,836 | 60 |

### JAIL.

We have had during the current year, a much larger number of prisoners than any previous year, and among them quite a number of "prisoners of war." Provisions have been extraordinarily high during the current year. The subjoined statement will exhibit the several amounts now due to the Jail:

| | | |
|---|---|---|
| Southern Confederacy | $2,610 | 12 |

### TREASURER'S REPORT FOR 1862.

| | | |
|---|---|---|
| Paid John Stoddard, chairman, to relieve the families of soldiers, engaged in service | $4,500 | 00 |
| Amount refunded by J. Stoddard, chairman | 348 | 36 |
| | $4,151 | 64 |
| Paid State and County Taxes of free persons of color, engaged at work on Green Island | 264 | 40 |
| Paid for cartridges, powder, caps, boxes, etc., for the use of the military | 233 | 13 |
| Paid refreshments for soldiers passing through the city | 673 | 43 |
| Paid salary passport office issuing passes | 785 | 00 |
| Paid for books and stationery for passport office | 520 | 10 |

### WAR EXPENSES.

Paid preparing and sinking the following vessels in Savannah river, so as to obstruct the channel:

| | | |
|---|---|---|
| Brig Santa Clara, ship Sebasticook, ship A. B. Thompson | $ 386 | 60 |
| Paid forty muskets for the use of the military | 960 | 00 |
| Paid labor constructing batteries on Savannah river, per order of General Lee | 2,990 | 00 |
| Total | $4,336 | 60 |

O'Bryne v. Savannah

This is sufficient to show the cause of defense. The report of 1863 was also read in evidence. The minor expenditures *on it detailed were for a city store to feed the poor, etc., at cheap rates. Each of these reports were replete with high "war talk" against the United States. The Court was requested to charge the jury that the "original taint attaches to renewal of contract," and "where original consideration was malum in se it taints all parts of the contract," but refused so to charge. But he charged, that if plaintiffs did not assess a tax in aid of the rebellion, it was not a dewere expended in aid of the rebellion, and that even if that fense of this action if a part of the taxes raised by them were expended in aid of the rebellion, and that even if that fact should constitute a defense, it went only to the proportion which the amount so expended bore to the whole amount of taxes raised; that the cause of action was not entire, but severable.

The jury found for plaintiffs the amount of the note. Defendants moved for a new trial, upon the ground that the refusal to charge as requested, and the charge as given were erroneous. This motion was overruled, and that is assigned as error.

John M. Guerrard, for plaintiffs in error. Taxation belongs to the sovereign: 2 Bl. Com., 37. Corporations can exercise it only according to grants, and they will be construed in favor of citizen: 2 Bl. Com., 347; 8 Ga. R., 23; 18th, 47; 20th, 102; 37th, 620. Ord. of Bibb v. C. R. R. Co., 40th; 25th, 610. The obligation to pay is part of social compact: 1 Bl. Com., 47, 307. Success alone can make acts done in rebellion valid: 34 Ga. R., 28; 37th, 528, 532. Vattel L. of N., 394. The Legislature remitted taxes: Acts 1864-5; Acts 1866, 255. These taxes void by Constitution, 1868: Art. 5, sec. 17. The war was rebellion: 35 Ga. R., 334; Am. L. Reg., June, 1869, 360; 39 Ga. R., 425. The consideration is, therefore, illegal: 35 Ga. R., 330, 364; 37th, 532; 11 Wheat R., 258; 38 Ga. R., 199. Contracts as to taxes entire: 11 Pick, 457; 56 E. C. L. R., 577. Though severable if consideration malum in se void in toto: 10 Peter's R., 361; 17 Barb. S. C. R., 406; 1 Sm. L. C., 502.

*E. J. Harden. A. W Hammond & Son, for defendants.

By the Court—BROWN, C. J., delivering the opinion.

1. The city of Savannah as a municipal corporation, has only such power of taxation as is granted to it by the sovereign authority. The right of taxation inheres in the sovereign: 2 Blac. Com., 37.

During the existence of the Confederate government, while the city, as is shown by this record, supported that government against the government of the United States, and the State Government formed part of the Confederacy engaged

in conducting war against the government of the United States, the city could claim no grant from the State, as one of the United States, to assess a tax for any purpose. Whatever powers she had while engaged in the war against the United States, under, and in aid of the government of the Confederate States, she derived from the State as a member of that government. Her legal government had been displaced, and she was controlled by a government whose authority depended upon the success of the armies of the government to which it adhered, and under which it exercised its powers.

2. A de facto government, able to maintain its supremacy by its arms, may exercise the power of taxation, and its subjects are bound to obey its laws and pay the tax assessed, as they are unable to resist its authority. It does this by virtue of its exercise of sovereignty while it is supreme. But after it has assessed a tax, if it is overthrown before the tax is collected, and the power of the rightful sovereign is re-established, the tax will not be enforced; as the rightful government will not execute the laws of the government de facto, in imposing burdens, by taxation, for its own support upon the subjects of the government de jure.

3. In such case we hold that those who were not compelled to pay the tax, during the existence of the government de facto, are no longer liable for it, after the government by *which it was imposed has ceased to exist.

337

And those who paid the tax have no remedy, as they can look alone to the government which received it for redress, and that has passed away and can afford none.

4. As the plaintiffs in error are not now liable to the city of Savannah for any tax assessed by her, during the period while the de facto government of the State and city adhered to the Confederate government, and aided in the war against the government of the United States, a promissory note, given in consideration of such supposed liability, is void for want of consideration.

5. The note sued on in this case is founded upon two distinct considerations, which, as the record shows, are clearly severable. One is the tax assessed by the de facto government of the city during the war. The other, an amount due the city for ground rent, by contract made prior to the war, and for the tax imposed by the rightful government since the war. The precise amount of war tax, and the exact amount of ground rent and legal tax are clearly ascertainable by reference to the record. A contract may be either entire or severable. In the former, the whole contract stands or falls together. In the latter, the failure of a distinct part, does not void the remainder. The character of the contract in such case is determined by the intention of the parties. See Revised Code, section 2683.

We hold that the Court should have instructed the jury in

this case, to deduct the amount of the tax assessed during the war, and to find for the city the amount due for ground rent and for tax assessed by the city authorities since the restoration of legal government over the city.

Judgment reversed.