Reuben J. Allen *et al.*, plaintiffs in error, *vs.* Enoch G. Brown *et al.*, defendants in error.

Where A, being fairly indebted to B, in discharge of the debt, sold him the north half of lot number eighty-six, and A, being in debt to others, it was arranged that B should take a deed to the *whole lot*, and make a title to A's wife for the south half, and the deeds were so made, and A afterwards sold the *whole lot* to C, who had notice of the transaction between A and B:

*Held*, That the contract as to the two halves of the lot being severable, the fraud as to the south half did not vitiate the whole, and the jury having set aside the *whole deed*, it was not error in the Court to grant a new trial as to the north half.

Fraudulent conveyances. Before Judge Harrell. Randolph Superior Court. November Term, 1870.

Reuben J. Allen *et al.*, as heirs of Jeremiah J. Allen, by their bill against Enoch G. and Thomas J. Brown, made this case: In 1856 their father died, owning land, lot number eighty-six, in said county. There was administration on his estate, and the administrator sold said lot at public outcry, and one Harp bid it off. The administrator made Harp a deed, but got only Harp's note for the sum bid. That administrator died, Harp became administrator, *de bonis non,*

of their father, and as such got up his note. But said note was never paid. In 1865 these complainants sued Harp for an account and settlement of his said administration. This suit was settled by Harp's conveying to them certain lands, including said lot. But pending this suit, and just before the judgment term of the same, with a view to prevent these complainants from realizing on any judgment which they might recover, said Harp and said Browns entered into a conspiracy, which resulted in Harp's conveying said lot to Enoch G. Brown, who was then and there the son-in-law of Harp's wife. Enoch G. was not to pay Harp anything, nor did he, but was to reconvey half of said lot to his mother-in-law, which he did, in May, 1866. They prayed that Harp's deed to Brown be cancelled, because of fraud, and because it was a cloud upon their title to said lot.

Defendants answered, that they did not know that Harp had not paid for said lot when he conveyed it to Enoch G. Brown, and that Harp was guardian of Enoch G. Brown's wife, and as such owed Brown, in her right, about $400 00, and agreed to let Enoch G. have half of said lot at $500 00, and thereupon Enoch G. paid him $100 00, and receipted him for the $400 00. And then, at Harp's special solicitation, he made a deed to Brown to the whole lot, with the understanding that he, Brown, should reconvey half to Mrs. Harp, which he did. And they averred that this was done before complainants sued Harp, and *bona fide*, without notice of any equity between them and Harp.

On the trial, the making of the papers was shewn. Harp's deed was dated prior to the beginning of said suit, but Harp testified that it was ante-dated and was really made pending the suit against him. The Browns testified exactly the contrary, and fully supported their answer by their testimony.

There was a verdict for the complainants. The Court granted a new trial, upon the ground, that the verdict was strongly and decidedly against the weight of the evidence, etc., and that is assigned as error.

L. C. HOYLE; H. FIELDER, for plaintiffs in error.

C. B. WOOTEN, for defendants, cited: 19 Ga. R., 292; 17 U. S. Dig., 286–7; 11 Texas R., 149; 34 Miss. R., 621.

McCAY, Judge.

It is admitted, on all sides, that the deed made by Harp to Brown was fraudulent, as against Harp's creditors, so far as concerns one-half of the land mentioned therein. As to *that*, it seems the plaintiff in the bill has got his rights. The real object of the bill is to set aside the deed as to the other half.

There is a good deal of evidence going to show that Mr. Harp was, in good faith, the debtor of young Brown and his wife, and that it was a part of the original transaction in making this deed to pay to them his debt to them. We think if it appear that such was the *bona fide* intent of the parties it would not make *this* transaction void, if with it there was another intent which was illegal, provided the two can be separated. We think, under the evidence, this could have been done. As appears by the statements of the elder Brown, the part of the land that was to go to the young man and his wife, was distinctly agreed upon, as well as the part that was to be made over to Mrs. Harp. By our Code, section 2723, if it be possible to separate the illegal from the legal part of a contract, the bad part does not vitiate the good. We think if the law had been distinctly presented to the jury under the facts as they appear, they would have found a different verdict. It does not appear what was the charge. We think the verdict was not supported by the evidence in setting aside the deed to the whole lot. We fear the jury were under the impression that the proof was strong of fraud in the deed, that this vitiated the whole, and we think there ought to be a new trial.

Judgment reversed.