ROBERT WAGNER, guardian, plaintiff in error, *vs.* DAVID P. ROBINSON, defendant in error.

56    47
f110  380

1. In a suit to charge a wife's estate for services, where, at the trial, the husband is dead and the wife insane, the plaintiff is an incompetent witness to prove that the services were rendered with their knowledge, consent and approbation, or to prove a contract with the husband in respect to the services.
2. A charge not applicable to the facts, in view of the main issue, should not be given.
3. Nor should a charge be given without, at least, *prima facie* evidence on which to base it.
4. The law of trusts and trust estates ought not to be given to the jury unless there is some evidence of a trust; but if given, whether correctly or not, a new trial will not be granted if the verdict is clearly right.
5. A married woman's property is not liable for the wages of an overseer hired by her husband to superintend her plantations, where there is no evidence that the credit was not given to the husband personally, or that he was not farming the plantations on his own account, or that he acted as his wife's trustee, or that she received the crops, or was otherwise benefited by the services rendered.

Witness.   Charge of court.   Trusts.   Husband and wife. Before Judge PATE.   Laurens Superior Court.   October Term, 1874.

Reported in the opinion.

HOWELL & DENMARK, by Z. D. HARRISON, for plaintiff in error.

No appearance for defendant.

BLECKLEY, Judge.

An overseer sued for wages.   The action was brought first against Vigal, as for a debt owing by him, individually.   The declaration was afterwards amended, so as to make him defendant as trustee for his wife; and the effort of the plaintiff, on the trial, was to establish a contract with him as trustee, and recover against the trust estate.   Pending the suit, Vigal died; and his wife being a lunatic, Wayne, as her guardian, was made a party in his stead.

It appeared in evidence that the plaintiff was hired by Vigal and served as overseer on plantations belonging to Mrs. Vigal. Whether the property was held in trust, and if so, whether Vigal or some other person was trustee, was not shown. It did not appear that Mrs. Vigal had anything to do with the plaintiff, or his services, or that she received the crops made on her plantations, or took the benefit of the plaintiff's services in any manner whatever. There was no evidence that either the plaintiff or Vigal acted for the benefit of her or her estate. All that connected her with the matter, was that she was owner of the plantations and the wife of Vigal.

1. The plaintiff proved by several witnesses the value of his services, and that Vigal said they were satisfactory. He offered himself as a witness to prove the contract with Vigal; and upon being rejected by the court on the ground that Vigal was dead and Mrs. Vigal insane, he again offered himself to prove the value of his services, and that they were rendered with the knowledge, consent and approbation of both Vigal and Mrs. Vigal. He was again rejected for the same reason. It is possible that he was competent to testify as to the value of his services; but if so, it was a harmless error to rule out that part of his proposed evidence. The value was already proven by several other witnesses introduced by himself, and there was no evidence from the other side in reply. The point of value was not where the case pressed. If the plaintiff could have recovered at all, he would have recovered enough. Under the Code he was certainly incompetent to prove a contract with Vigal, who was dead. We think he was equally incompetent to prove knowledge, consent and approbation on the part of Vigal and wife in respect to the services rendered. They could not be heard in answer to him on these matters any more than on the express contract, one being dead and the other insane. Knowledge, consent and approbation could be material only as elements of implied contract. Proof of what was said and done by way of express agreement, might as well be admitted, as proof of mental

states which the witness could not have known, except by inferring them from what was said and done, or from other less decisive indications.

2. The plaintiff requested the court to charge the jury that when services are performed at another's instance, without an agreement as to price, the law implies that they are to be paid for at what they are reasonably worth. Ordinarily, this charge would have been proper, but in the present case it needed amendment in one important particular. Paid for by whom? It is not stated, and there lay the whole controversy. The guardian of Mrs. Vigal defended this suit on the one ground that his ward's property was not liable for the plaintiff's wages. . This was the plea and the sole defense. Had the request to charge stated that the law implies the services are to be paid for *by the employer* at what they are reasonably worth, it would have been unobjectionable. But without that amplification it lacked adjustment to the exigencies of the case, and the refusal to give it to the jury was not error.

3. Another request to charge was made and refused, and we think properly refused, for the reason, at least, that there was no evidence on which to base it. It was, that if the plaintiff performed services as overseer for the benefit of Mrs. Vigal, he was, in equity, entitled to payment out of her estate, and if the case was made out, recovery might be had at law. There is no evidence in the record that the services were for Mrs. Vigal's benefit.

4. The court charged that if Mrs. Vigal owned a trust estate, and Vigal was her trustee, and he, as such, contracted with the plaintiff to oversee the trust estate, and the ordinary did not approve the contract, the plaintiff was not entitled to recover. The court should not have made any such charge as this, there being absolutely no evidence that Mrs. Vigal owned any trust estate, or that Vigal was her trustee, or acted in that capacity in employing the plaintiff. The charge being thus erroneous for irrelevancy, it is of no consequence whether what it lays down in reference to the ordinary's approval be law or not. It may be that the act of 1866, Code,

section 2331, is to be construed as requiring such approval, in order to charge trust estates, in all cases of contract by trustees for labor or service. We do not find it necessary to decide the question now, and it is one of too much difficulty and importance to decide needlessly.

5. The verdict below was for the defendant, and the judge granted a new trial for supposed error in refusing to charge as requested and in the charge given. While there was error in the charge given, it was not error, as we have seen, against the plaintiff. The evidence made no case whatever against Mrs. Vigal or her property. The verdict of the jury was right. The plaintiff hired himself to Vigal, and he must look to Vigal or his estate for compensation. To him, doubtless, the credit was given; for the plaintiff, at first, brought suit against him individually, and it seems to have been an after-thought to attempt charging him as trustee. When a husband farms upon his wife's land, it does not follow that he is her trustee or her agent, or that he is conducting farming operations for her. These facts, if true, are to be proved and not guessed at. The ownership of land is one thing, and farming or planting another. What the husband does, is to be presumed to be done for himself and on his own account, whether he uses his wife's land or that of some other owner. If it were otherwise in this case, it would most probably have been susceptible of proof by competent evidence. The jury could not consistently, with the facts before them, have found any other verdict than the one they did find, under any legal charge that the court could have given. For that reason, we reverse the judgment granting a new trial, and leave the verdict to stand.

Judgment reversed.