## KEA *et al. v.* EPSTEIN & BROTHER.

1. The evidence warranted the jury in finding that a large part of the debt secured by the mortgage was fictitious and therefore that the mortgage was tainted with actual fraud; also that the assignment was tainted with like fraud because it made the mortgagee one of the preferred creditors to the full amount of the mortgage.
2. A mortgage upon a stock of goods as a whole and to secure a single debt as a whole, if void as to a large part of the debt by reason of a contemplated fraud upon other creditors designed to be perpetrated by the execution and use of the mortgage, is void as to the whole debt.

April 20, 1891.

Fraud. Assignments. Mortgages. Debtor and creditor. Before Judge HINES. Emanuel superior court. April term, 1890.

Epstein & Brother and Rosenheim & Company, creditors of J. R. Howell, filed their bill to set aside a mortgage made by Howell to Kea and an assignment made by Howell to Dawson and Williams & Brannen.

The indebtedness of Howell to Epstein & Brother was $472.56 principal, and to Rosenheim & Company $280.65 principal, the indebtedness to both firms being upon accounts for goods. The mortgage by Howell to Kea was to secure a promissory note for $1,200, the note and mortgage both being dated December 21, 1886, and the note being due October 15, 1887. The note stipulated for the payment of interest at —— rate after maturity. The mortgage was upon all the stock of merchandise and the store fixtures then in the storehouse of Howell. It was not recorded until December 12, 1887, after the credit had been extended by complainants and after the bill had been filed. The assignment was made October 19, 1887, and was a general assignment, on account of the insolvency of Howell, of all the property of Howell, consisting of a stock of goods and fixtures valued at $1,051.65, a tract of land, notes, accounts and some personalty. It was for the benefit of the creditors generally of Howell, except that Kea and another were named as preferred creditors. The salesman who sold the goods of Epstein & Brother to Howell knew nothing about Howell's insolvency, nor about the mortgage held by Kea, and made the sale a short while before the assignment. He is an expert in estimating stock, made a careful examination of Howell's stock, and thought it worth not over $800 about the time the mortgage was made. It was shown that Kea returned nothing for taxation but a poll in 1885 and 1887 in the county in which he lived. Howell owed one Ricks about $100, which was not included in the assignment and was afterwards paid to Ricks by one of the assignees, Dawson, in notes in favor of Howell against one Hutcherson. When the mortgage was made, Kea gave Howell on the mortgage $400 and said something about arranging the balance in a short while. The notes from Hutcherson to Howell were

not included in the assignment. Kea testified that he loaned Howell the money on the mortgage to help him in his business; that he let Howell have $400 at the date of the mortgage, the next Monday sent about $200 to Epstein & Brother for him, and had previously let him have about $600; that the mortgage was made in good faith and Howell owed him the money; that he simply neglected to record the mortgage and did not keep it off the record to swindle any of Howell's creditors; that he did not know Howell was insolvent when he took the mortgage, and Howell had about that much goods in his store. In regard to the Ricks debt, there was testimony that Howell placed the Hutcherson notes in Dawson's hands before the assignment was made, for the purpose of paying Ricks, which Dawson did, and the notes were not included in the assignment for this reason. Howell included in the assignment everything he had so far as Dawson knew, who lived close by him.

The verdict was in favor of the plaintiffs, and that the mortgage and deed of assignment were null and void. To the overruling of a motion for a new trial on the general grounds, the defendants excepted.

WILLIAMS & BRANNEN and T. B. FELDER, Jr., for plaintiffs in error.

A. HERRINGTON and T. H. POTTER, *contra.*

BLECKLEY, Chief Justice.

1. If the mortgage was tainted with fraud, it was with actual, not constructive, fraud. As to the existence of a large part of the debt which purported to be secured, there was no evidence, outside of the mortgage and the note described by it, except the testimony of the mortgagee; and he entered into no particulars as to time or place, but said that he had advanced or loaned to the mortgagor, before the mortgage was executed, about $600. He did not show how or where he

obtained the means to do this, and, according to the tax-books adduced in evidence, he possessed nothing taxable but his own head the year before or the year after the mortgage was executed. The amount secured was $1,200, and when the mortgage was taken the stock of goods embraced in it was valued by the mortgagee himself at that amount. Thus according to his testimony he added to a loan of about $600 previously made, a further loan of $400 when the mortgage was executed, with the understanding that more was still to be advanced to make up the sum secured by the mortgage, and this was advanced afterwards. The jury could well believe that he would not hazard $1,200 upon a stock of goods worth no more than that sum, especially when by other evidence it appeared that the value of the stock was in fact only $800. Furthermore, the mortgage was kept off the records for nearly twelve months, and for more than two months after the mortgagor had made an assignment. Indeed it was not recorded until after the bill to set it aside had been filed. Another fact of some moment is that the note for $1,200 secured by the mortgage was not to become due until nine months and a half after its date, but contained no stipulation that it was to commence bearing interest until after maturity. There is no explanation in the evidence of why the mortgagee would or should allow the use of his money by the mortgagor for such a length of time, and on such security, without compensation. The jury, it seems to us, were entitled to conclude, if they thought proper to do so, that about one half of the debt covered by the note and mortgage was fictitious. True, in arriving at this conclusion, they would have to discredit the mortgagee as a witness, but this, in view of his interest, would be allowable. They must be supposed to know whether his oath or the circumstances militating against his veracity should be preferred as a guide to truth. If so large a proportion of

the debt was fabricated, some actual fraud upon other creditors must have been intended by both the mortgagor and mortgagee. And if the mortgage was fraudulent, the assignment must also have been fraudulent; for it makes the mortgagee one of the preferred creditors to the extent of the whole amount of the mortgage debt, to wit, $1,200. Besides this, the assignment has another infirmity. One of the creditors was omitted from the schedule, and certain assets with which to pay him were left out of the assignment. This was done, not inadvertently, but by design, the intent being that the assets should afterwards be applied to the satisfaction of that creditor's demand, which was done.

2. It is contended, however, that the mortgage would not be void because a part of the debt was fictitious, but would be good as to so much as was real and genuine. We think this position is not sustainable, if actual fraud was contemplated in fixing the amount of the debt or pretended debt to be secured by the mortgage. Baldwin v. Short (N. Y. Feb. 1891), 26 N. E. Rep. 928. Says Chancellor Kent: "A deed fraudulent in fact is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity." Boyd v. Dunlap, 1 Johns. Ch. 482. In *Allen* v. *Brown*, 43 *Ga.* 305, a decision of doubtful correctness, the parties, at the time the deed was executed, made separate stipulations as to each half of the lot covered by the deed. Here, on the contrary, there was no division of the property covered by the mortgage, contemplated or agreed upon. All of it was devoted alike to the legal and to the illegal object sought to be subserved by the execution of the mortgage. What the parties joined together for the consummation of a fraud, the court and jury called upon to defeat the fraud were not bound to put asunder.

*Judgment affirmed.*