## JONES *v.* HARRELL *et al.*

</div>

1. A promissory note given by a married woman for the purpose of paying her husband's debt is not illegal, but merely void or voidable at her election as against the original payee.

2. If a married woman signs a promissory note the consideration of which is partly her own debt and partly the debt of her husband, the payee can recover in a suit on the note that portion which was based upon the debt of the wife, the amount of her debt and of that of the husband being clearly shown by the evidence.

3. The fact that the husband cultivates his wife's lands does not raise a presumption of law or of fact that he is her agent.

4. Where a husband signs a note as the agent of his wife, and she, in her answer to a suit thereon, denies that he was her agent, it is error to admit his declarations to prove his agency; nor, until his agency is shown by at least prima facie evidence, are such declarations admissible to bind the wife.

5. If the husband be introduced as a witness and deny making such declarations, evidence tending to show that he did make them is admissible, not for the purpose of establishing the agency but only to contradict him; and the trial judge should so instruct the jury.

6. Where a contract is sued upon which stipulates for the payment of attorney's fees, and where of several pleas filed by the defendant one is sustained, the plaintiff is not entitled to recover any attorney's fees.

<div align="center">

Argued March 9,—Decided April 5, 1900.

</div>

Complaint.    Before Judge Nottingham.    City court of Macon.    June term, 1899.

*Hardeman & Moore* and *Hall & Wimberly,* for plaintiff in error.    *Hope Polhill, W. C. Nottingham,* and *Bacon, Miller & Brunson,* contra.

SIMMONS, C. J.    It appears from the record that Mrs. Jones
owned a farm in Twiggs county, Georgia, and that her husband,
A. B. Jones, cultivated it.    In 1893 the husband applied to
Davis & Co. to accept a draft so as to enable him to raise money
to cultivate the farm.    He stated to them that his wife owned
the farm, but agreed, if they would accept the draft, to sign it
as his wife's agent.    They accepted it, and to secure their accep-
tance took a mortgage from him on certain horses and mules.
It seems that a Mr. Bullard advanced the money on the draft to
Jones.    The draft becoming due in the fall, Jones was unable
to pay it, and he requested Bullard to renew it.    This Bullard
refused to do.    Jones owed Bullard an antecedent debt of $250.
Bullard finally consented to renew the draft if Jones would
include in the renewal one half of the amount of the old debt
which was confessedly that of Jones and not that of his wife.
Jones agreed to this, and another draft was made and the
amount of the first draft and one half of the old debt included.
This draft, dated Nov. 10, 1893, signed by Jones as his wife's
agent and for the sum of $600, was also accepted by Davis &
Co.    This last arrangement was made between Jones and Har-
rell, the son-in-law and agent of Bullard.    Bullard died, and
this draft was received by Mrs. Harrell, his daughter, as part
of her distributive share of his estate.    She gave it to her hus-
band, who seems to have held it until February, 1899, when he
brought suit upon it against Mrs. Jones as drawer, and Jones
as the agent of his wife and Davis & Co. as acceptors.    To this
suit Jones filed a plea in which he admitted most of the allega-
tions in the petition, but he denied that he was the agent of his
wife in making and signing the draft, and set up that his liabil-
ity was second to that of Davis & Co.    Mrs. Jones pleaded non
est factum, and also that a part of the consideration of the draft
was a debt of her husband.    The record does not disclose that
Davis & Co. filed any plea, but from the evidence introduced
and the verdict of the jury finding " for W. A. Davis & Co., the
defendants, on their plea of release," we presume that they
pleaded a release.    On the trial of the case Mrs. Jones testi-
fied that her husband was not her agent; that she had not au-
thorized him to sign the draft or any other paper for her; that

she had nothing to do with the cultivation of her land, it being cultivated by her husband by her consent but on his own responsibility; and that she had never until suit brought known of his signing any note or draft as her agent and had never ratified any such acts. Jones also testified that he was not her agent; that he cultivated the farm for himself, but signed the drafts as his wife's agent because he was insolvent and could obtain no credit except by signing as his wife's agent and giving mortgages on her property. There was also testimony to the effect that from the year 1892 to the year 1898 he did business with various cotton factors, and that he signed notes and drafts as agent for his wife and was carried on their books as agent. It further appeared that he cultivated the farm, hired the hands to work it, and in other ways managed and controlled it, but the witnesses did not know whether he was acting for himself or for his wife. The crops were shipped in the name of the wife or of the husband as agent. The jury returned a verdict for the plaintiff against Mrs. Jones for the amount of the draft, less the amount of her husband's debt which had been included in the draft. Their verdict also released Davis & Co., and, as no exception is taken to such release, we have not stated any of the evidence relating to that branch of the case. Mrs. Jones made a motion for a new trial upon grounds which will appear in substance hereafter. The case comes here upon exceptions to the overruling of this motion.

1, 2. One of the grounds of the motion for new trial was, that the court erred in instructing the jury that if they believed that a part of the consideration of the draft sued on was the debt of the husband and the other part the debt of the wife, and that the agency had been proved, they might deduct from the amount of the note the debt of the husband and find for the plaintiff the balance of the note. This was claimed to be error, because it was contended that a married woman can not, under the code, assume the debt of her husband, and that where she gives a note of which a part of the consideration is the debt of her husband, the assumption of the husband's debt is illegal and the whole note void because tainted with an illegal consideration. In support of this contention counsel for the plaintiff in error relied

upon section 3062 of the Civil Code, which provides as follows:
"If the consideration be good in part and void in part, the
promise will be sustained or not, according as it is entire or
severable, as hereinafter prescribed. But if the consideration
be illegal in whole or in part, the whole promise fails." This
brings us to a consideration of the question whether this part
of the consideration of the draft, the assumption of the debt of
the husband, was illegal in the strict sense or merely void or
voidable. An illegal contract may be one malum in se or malum
prohibitum; may be vicious, prohibited by statute, or contrary
to the public policy of the State. In such cases the contract is
illegal, and courts of course refuse to enforce it. The as-
sumption by the wife of the debt of her husband is not immoral,
nor prohibited by any statute, nor, so far as we have been able
to ascertain from an investigation of our reports, against public
policy. In nearly all cases where these latter contracts have
been discussed they have been held to be merely voidable or void.
They are so, not because prohibited by statute, but because
the legislature, in conferring upon married women the power to
contract, refused to give her the right to so contract as to
become security for any person, pay her husband's debt, or sell
her property for the payment of the debt of her husband.
Prior to this legislation the wife could not contract at all, and
a contract made by her was void. Her legal existence, in so
far as contracting and managing her property was concerned,
was merged in that of her husband. So far as concerned the
making of contracts, she was civilly dead during coverture.
The legislature relieved her of this disability and incapacity,
and gave her the power to contract as a feme sole with regard
to her separate estate, save that it distinctly refused to give her
the power to become security for any one, to contract to pay her
husband's debts, or to sell her property in payment of her
husband's debts. As to these matters she still stands as she did
at common law. Should she, therefore, make any contract
with regard to these matters, it would not be binding upon her;
and this, not for the reason that the contract would be illegal,
but because she has no capacity under the law to make such a
contract. It will be perceived that there is a difference between

an illegal contract or a contract founded upon an illegal consideration, and one which is void or voidable or based upon a void or defective consideration. If the consideration be illegal, in whole or in part, the courts will not enforce any part of the contract. Upon this subject Clark, in his excellent work on Contracts, lays down the following rule (p. 389) : "Where no penalty is imposed and the intention of the legislature appears to be simply that the agreement is not to be enforced, neither the agreement itself nor its performance is to be treated as unlawful for any other purpose."·

It will be seen from reading section 2488 of the Civil Code that the provision is that the wife "can not bind her separate estate by any contract of suretyship, nor by the assumption of the debts of her husband; and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." There is no penalty prescribed for the violation of the section, nor is there any direct prohibition in the section. It is clear that the legislature meant only that such contracts of the wife should be unenforceable. The wife may defeat a suit against her upon such a contract. If she is sued and does not make this defense but allows judgment to go against her, it is a valid and binding judgment. And it has been held that where a wife gives a negotiable note for the debt of her husband and it is transferred before due to a bona fide purchaser for value, it is valid and binds her. It follows from what we have said that the assumption of the debt of the husband by the wife is not illegal in the sense in which the word is used in the code section relied upon by the plaintiffs in error. It follows further that if the wife gave her note partly for her own debt and partly for the debt of her husband, a portion of the note would be based upon a valuable and valid consideration, and the remainder would be void as without consideration, because of her incapacity to contract as to that portion. Where her individual part could be readily separated from the part which was for the debt of the husband, she would be liable in a suit upon the note for the part which was good. As we have seen, section 3662 of the Civil Code declares that if the consideration be good in part and void

in part, the promise will be sustained if it is severable.   Treating, for the purposes of this argument, the original draft,— that which was part of the consideration for the present or renewal draft,— as the debt of the wife, we see no reason in law or morals why she should not be compelled to pay it.   This is said, of course, upon the hypothesis that the husband was duly authorized to make that debt and contract for her.   In the case of *O'Byrne* v. *Savannah,* 41 *Ga.* 331, it appeared that Mrs. O'Byrne gave promissory notes for a tax assessed against her during the war between the States.   In her note was also included ground-rent due the city.   This court held that " A note given for such tax and for ground-rent due the city, by contract made prior to the war, is void as to the tax but good as to the rent.   The consideration is clearly severable, as the record shows precisely how much of it was for tax and how much for rent."   It will be seen from reading the case that the tax assessments were made during the war, but that the notes were given after the war had closed. ·  The court, in discussing the subject, said : " As the plaintiffs in error are not now liable to the City of Savannah for any tax assessed by her during the period while the de facto government of the State and city adhered to the Confederate government and aided in the war against the government of the United States, a promissory note, given in consideration of such supposed liability, is void for want of consideration.   The note sued on in this case is founded upon two distinct considerations which, as the record shows, are clearly severable.  One is the tax assessed by the de facto government of the city during the war.   The other, an amount due the city for ground-rent, by contract made prior to the war, and for the tax imposed by the rightful government since the war.   The precise amount of war tax and the exact amount of ground-rent and legal tax are clearly ascertainable by reference to the record." In the case of *Allen* v. *Brown,* 43 *Ga.* 305, this court held : " Where A, being fairly indebted to B, in discharge of the debt sold him the north half of lot number eighty-six, and, A being in debt to others, it was arranged that B should take a deed to the *whole lot* and make a title to A's wife for the south half, and the deeds were so made, and A afterwards sold the *whole lot* to C,

who had notice of the transaction between A and B : *Held,* that, the contract as to the two halves of the lot being severable, the fraud as to the south half did not vitiate the whole."

In the case of *Finch* v. *Barclay,* 87 *Ga.* 393, the note sued on was given by Mrs. Finch to Barclay, and one of her pleas was that the consideration of the note was certain meat and corn sold by the plaintiff, a grocery merchant, to her son, by weights and measures, and that the plaintiff had not applied to the. ordinary and had the weights and measures stamped as required by law. While the point made by her in this plea was not decided in this court, the question not having been passed upon by the court below, Bleckley, C. J., in commenting on it, after having quoted the section of the code (now 3662), said: "Ought the consideration of a promissory note, in so far as it embraces the price of goods or commodities sold by unmarked weights and measures, to be treated as merely void, or should it be treated as illegal ? If the former, the balance of the note would be collectible; if the latter, such balance would probably not be collectible by an action on the note itself, but only by an action upon the original promise or contract apart from the note." This clearly shows the opinion of that eminent jurist as to the law in case a portion of the consideration of a note is void but not illegal. See also *Lewis* v. *Howell,* 98 *Ga.* 428.

For these reasons we hold that so much of the draft sued on as was based upon the debt of the husband was based upon a consideration, not illegal, but merely void for the want of capacity in the wife to make such a contract. That portion of the draft which was based upon her own individual debt (assuming that her husband had power as her agent to make the contract) was for a valid consideration and was binding upon her, the evidence showing the exact amount of her debt and of her husband's. After deducting the amount based upon the debt of the husband, the balance was collectible.

3. Pending the trial, the court was requested in writing to charge the jury, in substance, that the fact that a husband cultivates his wife's lands does not raise a presumption of law or of fact that he is her agent. Under the facts disclosed by the record, we think the court should have given this request.

Doubtless it was contended by the plaintiff's counsel at the trial that the fact that the husband cultivated the lands of the wife, superintended the farm, etc., was evidence of his agency, and that the jury could infer agency from these facts alone. There was no direct evidence on the part of the plaintiff that Mrs. Jones, in the year 1893, when this draft was made, had ever appointed her husband her agent to cultivate her farm or had ever known of his claim of agency or had ever recognized him as her agent or ratified any of his acts as agent. On the contrary she and her husband both testified positively that he was not her agent, and she testified that she had never known he was acting as her agent or had signed any notes or drafts as her agent, and that she had never received any of the yield or profits of the farm as such, but that her husband cultivated it on his own account and responsibility. In the case of *Wagner* v. *Robinson,* 56 *Ga.* 47, Bleckley, J., in discussing this question, said: "When a husband farms upon his wife's land, it does not follow that he is her trustee or her agent or that he is conducting farming operations for her. These facts, if true, are to be proved and not guessed at. The ownership of land is one thing, and farming or planting another. What a husband does is to be presumed to be done for himself and on his own account, whether he uses his wife's land or that of some other owner."

4. The plaintiff was allowed, over the objection of the defendants, to testify that Jones, the husband, had told him that he (Jones) was the agent of his wife. It is a well-settled rule that the declarations of an alleged agent are not admissible to prove his agency. The agency should be first proved; then the declarations, if made as to matters within the scope of the agency, would be admissible to show that the agent was acting as agent and for the principal. "The agent certainly can not confer authority upon himself. Evidence of his own statements or admissions, therefore, is not admissible against his principal for the purpose of establishing, enlarging, or renewing his authority; nor can his authority be established by showing that he acted as agent or that he claimed to have the powers which he assumed to exercise." Mechem, Agency, § 100. See also *Small* v. *Williams,* 87 *Ga.* 681; *Johnson* v. *R. Co.,* 90 *Ga.* 810; *Abel* v. *Jarratt,* 100 *Ga.* 732 (2).

5. On the trial the husband, Jones, was asked if he had not told certain persons that he was the agent of his wife. He denied having done so. A witness was introduced to show that the husband had represented himself to these persons as the agent of his wife. This testimony was objected to, the objection overruled, and the evidence admitted for the purpose of contradicting the husband; the judge remarking at the time that he would charge the jury as to the effect of it. The judge failed, however, to charge as to this matter, and the failure to do so was excepted to. As held above, the declarations of the husband were not admissible to prove his agency, nor, until the agency was established at least prima facie, were they admissible to bind the principal or show that the husband was acting as agent. It is doubtful whether they were admissible even as impeaching evidence, inasmuch as the plaintiff had not theretofore made out a case of agency; but, however this may be, we are clear that the judge should have instructed the jury as to the effect which could be given to this impeaching testimony. He should have instructed them that the impeaching evidence was not admitted for the purpose of establishing the fact of agency but only to contradict Jones and to affect his credibility. This was not done, and the jurors may have given this testimony the weight and effect of evidence admissible to establish the fact of agency. The judge should have explained the matter to the jury and have properly limited the effect of the evidence. *Watts* v. *Starr,* 86 *Ga.* 392; *Central R. & B. Co.* v. *Maltsby,* 90 *Ga.* 630.

6. Complaint was also made of that part of the verdict of the jury which found against the defendant for attorney's fees. Mrs. Jones had filed several pleas to the petition, and in one of them alleged that the draft was given in part to pay an old debt of her husband. The jury sustained this plea, and found a verdict for the amount of the draft less the amount of the husband's debt referred to in the plea, adding thereto interest and attorney's fees. The addition of the attorney's fees was improper. One of the defendant's pleas was sustained, and the plaintiff was not entitled to recover any attorney's fees whatever, although the jury found in his favor on the issues made

by the other pleas. Civil Code, § 3667. *Goodrich* v. *Ass'n, 96 Ga.* 803.

> *Judgment reversed. All the Justices concurring.*