## 467.  FARMERS AND TRADERS BANK v. EUBANKS.

1. While a wife can not legally make a contract of suretyship or assume the debt of her husband, yet where she has given a negotiable note payable to her husband's order and intended to be used as security for or in payment of his debt, and it has been transferred to a bona fide purchaser for value before maturity and without notice, it is valid and binds her.

2. In a conflict between the rights of a married woman and the rights of a bona fide holder of a negotiable instrument, the one whose voluntary acts furnish the opportunity for deception and fraud should suffer any consequent loss.

3. The law which is made for the protection of married women will not permit or tolerate in its beneficiaries an abuse of its beneficent purpose.

4. The fact that a negotiable note of the wife is made payable to the husband does not of itself import invalidity because apparently made without the approval of the superior court of the wife's domicile. Where such note does not involve a sale of the separate estate of the wife to the husband, it is valid without such approval.

5. Where a married woman gives her individual negotiable note, the presumption of law is that she gave it on her own contract and for value; and when sued thereon, the burden is on her to show that the note falls within some of the restrictions on her right to contract, and that the holder of the note had notice of its invalidity when he took it.

6. The evidence in this case was in conflict on the vital and controlling question of notice, and the direction of a verdict for the defendant was error.

Complaint, from city court of Atlanta—Judge Reid. April 1, 1907.

Submitted October 14,—Decided November 14, 1907.

*Candlers, Thomson & Hirsch,* for plaintiff.

*E. V. Carter,* for defendant.

HILL, C. J. The Farmers and Traders Bank sued Mary J. Eubanks on a promissory note made by her to her husband, which he had indorsed and transferred to the bank before maturity as collateral security for a loan made to him by said bank. The defendant filed an answer in which she averred, that the note was without consideration, and that the bank received the note with knowledge that the same was executed by her as a contract of suretyship or in assumption of a debt which her husband owed said bank; and that for these reasons the note was void as to her and not binding on her separate estate. On the conclusion of the evidence, the court directed a verdict for the defendant; and the bank assigns error. The evidence in the record is brief, consist-

ing of the note, the testimony of the husband of the defendant, and that of the cashier of the plaintiff. According to the testimony of the husband, he wanted to borrow some money from the bank, and, thinking that he could not get it on his own note, he got his wife to make the note sued on. This note he gave to the bank as collateral security for a loan made by the bank to him on his individual note for the same amount as the collateral note of his wife. At the time of the transaction, he told the cashier of the bank that his wife did not in fact owe the note to him which she had made at his request, and had received therefor no consideration whatever. He also testified, that his wife did not receive any part of the money loaned to him by the bank on his note, with her note as collateral; that he owed the bank some money and wanted to get more, and, in order to get it, tendered his wife's note to the bank. The wife knew at the time she made the note to her husband that his purpose was to use it with the bank to borrow money, and she voluntarily signed it. His wife did not owe him anything for mules and fertilizers used on her farm at the time she made the note, and the note was not given to him in payment therefor. The cashier testified, that the note was indorsed by Eubanks to the bank before maturity; that he brought the note to the bank and said he wanted to get $500 on his note, and put this note up as collateral. "I said, 'Mr. Eubanks, this is your wife's note, and, under the law of Georgia, she could not loan you money; it is entirely worthless unless it is for a bona fide transaction.' He replied that it was for a bona fide transaction, and that she owed him this money . . for mules that he had purchased for her, or paid for, for her, that she was using on her farm." None of the money loaned to Eubanks on his note, with this note as collateral, was paid to his wife, but it was all placed to his credit. The cashier knew at the time he loaned the money to Eubanks that the maker of the note taken as collateral was his wife.

Does this evidence with all reasonable deductions and inferences therefrom demand the verdict directed for the defendant? In this State there are three restrictions upon the rights of a married woman as to her separate property: (1) She can not bind her separate estate by any contract of suretyship. (2) She can . not assume the debts of her husband, and her estate is not liable

for them. Civil Code, §2488. This last restriction is embodied in the constitution of the State. Civil Code, §5790. (3) No contract of sale of a wife as to her separate estate, with her husband or her trustee, shall be valid, unless the same is allowed by order of the superior court of the county of her domicile. Civil Code, §2490. With these exceptions, the wife is a feme sole and can do as she pleases with her own. These restrictions were designed to protect the wife against the "kicks and kisses" of her husband, her conjugal leanings, the importunities of her husband's creditors, and the pliant nature of feminine character. This law, however, has been construed by the Supreme Court from the beginning in tender regard to the rights and equities of innocent persons. The words "absolutely void," as characterizing the prohibited contracts of married women, have been declared to mean "voidable" at the election of the wife (*Jones* v. *Harrell,* 110 *Ga.* 373; *Perkins* v. *Rowland,* 69 *Ga.* 664), and not "voidable" when they come in conflict with the rights and equities of bona fide holders and purchasers for value. *Perkins* v. *Rowland,* 69 *Ga.* 661; *Howard* v. *Simpkins,* 70 *Ga.* 322; *Venable* v. *Lippold,* 102 *Ga.* 208; *Sutton* v. *Aiken,* 62 *Ga.* 742. The bank claims to be a bona fide holder for value. It claims to have taken the note as collateral without any notice, actual or constructive, that it was invalid. On the contrary, its cashier, with whom alone the transaction was had, was informed by the husband that the note was made to him in consideration of mules "purchased for her, or paid for, for her, that she was using on her farm," and that the transaction between him and his wife was in every respect bona fide.

The question, under this evidence, is, can a married woman set up this defense to a holder of negotiable security who takes it bona fide for value without notice of invalidity, and before due? In the cases above cited, as well as in many others, the Supreme Court has ruled that while a wife can not make a contract of suretyship or legally assume a debt of her husband, yet when she has given a negotiable note for his debt, and it has been transferred to a bona fide holder for value before due and without notice, it is valid and binds her. In other words, the wife's rights must be construed with reference to the rights of the bona fide holder. In protecting her the law does not permit her, either by herself or by her husband, to perpetrate a fraud on the innocent,

and will not tolerate in its beneficiaries an abuse of its beneficent purpose. In the language of Mr. Justice Bleckley, in *Sutton* v. *Aiken,* supra, "looking to the collateral doctrines of the law that ought to be considered in connection with restrictive legislation which we are now construing, the *great* doctrine of protection to innocent purchasers presents itself. Bona fide purchasers for value and without notice are generally recognized as occupying a very high stand in courts, both of law and equity. . . Were a married woman incapable in law of conveying her property at all, all the world would be bound to take notice of her disability. But such is not her incapacity; on the contrary, her general power over her own is as ample as if she were a man. She can buy and sell with perfect freedom, from or to the whole world, except her husband or her trustee, so that she does it for her own benefit.

. If, trusting to the document she has signed, sealed and delivered, any person should be honestly misled by it, why should she not abide the consequences? . . Our conclusion is, that a conveyance amenable to section 1783 of the Code (now Civil Code, §2488) is 'absolutely void' as between the maker and all persons affected with notice, but that a subsequent bona fide purchaser, for value, and without notice, is protected." This language was used in reference to a deed executed by the wife to her separate property, but it is equally applicable to a negotiable note executed by her. Indeed we think that the exigencies of commercial transactions require that innocent purchasers of negotiable instruments before due should have the strongest protection; and where no infirmity appears on their face, every presumption should be invoked in favor of the validity of such instruments and the title of the holder.

The code of Georgia in asserting the principle of law so firmly imbedded in jurisprudence, that a bona fide purchaser of a negotiable instrument for a consideration, before maturity, is protected, limits the defenses that can be set up by the maker, acceptor, or indorser, as against the rights of such holder, to only the three of non est factum, gambling or immoral and illegal consideration, and fraud in its procurement. Civil Code, §3694. Neither of these is set up in this case. It is admitted that the plaintiff bank obtained the note for a consideration, before maturity. Unless the note carries upon its face sufficient indicia of

fraud or illegality to put the bank on notice, the law presumes that it is a bona fide purchaser. Civil Code, § 3696. "The holder of a note as collateral security for a debt stands upon the same footing as the purchaser." Civil Code, § 3697. Was knowledge of the fact that the wife executed the note sufficient notice in law to the bank? By the common law a married woman could not make a note, and in some of the States she is prohibited from making promissory notes payable to her husband. "In this State the right of a married woman to make a contract is the general rule, her disability is the exception; and therefore, where the paper purports to contain a contract which a married woman would have a right to make, an innocent purchaser would be protected against any plea setting up the disability of the maker on account of the contract being within some of the exceptions provided by law. And this would be true, even though the holder knew at the time he acquired the note that the maker was a married woman." *Hager* v. *National German-American Bank,* 105 *Ga.* 122.

Does the fact that the note of the wife was payable to the husband import notice of any invalidity or infirmity? The only law in this State which restricts a wife from making a contract for her own benefit with her husband is contained in section 2490 of the Civil Code: "No contract of sale of a wife as to her separate estate with her husband or her trustee shall be valid, unless the same is allowed by order of the superior court of the county of her domicile." The right to contract generally for her own benefit is conferred upon a married woman by the act of 1866. She has the same rights as a man, except as to contracts of suretyship and contracts which assume the payment of the husband's debt. Code section 2490 restricts the general right of a married woman to make contracts, and should not be extended by construction beyond the clear and manifest purpose of the statute. The express terms of the section apply only to contracts of sale by the wife to her husband of her separate estate, but the purpose of the act is to protect the wife in every transaction between her husband and herself which involves a transfer of her separate estate to him. If there is danger to the interest of the wife in conveying her separate estate to her husband, the same danger exists to the wife in buying property from the husband and transferring in payment her separate estate. Every transaction, therefore, between

husband and wife which amounts to a sale and which involves a transfer of her separate estate falls within the spirit of the law as expressed in section 2490, and requires, as a condition of validity, the approval of the superior court of the wife's domicile. It is true that the Supreme Court has in many cases treated as valid a sale by the husband to the wife when there was no order of the superior court allowing the sale, but in none of the cases was the question directly made. In *Webb* v. *Harris,* 124 *Ga.* 733, Mr. Justice Cobb uses the following language: "If land of the husband be conveyed to the wife for a consideration, the consideration, whatever it be, money, property, or chose in action, is the separate estate of the wife. Hence it follows that in every case of sale between husband and wife, there must, in order to render the transaction valid and complete as between them, be an order of the superior court approving the transaction, at least so far as the wife's property involved is concerned." While this language in the particular case was the dictum of the learned jurist, we think it so correctly interprets the statute that we adopt it as persuasive and convincing authority. There are, however, some money transactions between husband and wife which do not involve a sale or transfer of her separate estate; as, for illustration, when the husband loans to the wife his money and takes her note to repay the loan with legal interest, or when the husband buys for the wife property, using his own money, and takes from the wife her note to repay him the money so expended in her behalf. These transactions do not involve a transfer of her separate estate to him, and are valid without any order or approval by the superior court.

In the present case the cashier of the plaintiff testified that the husband told him, when he tendered his wife's note to the bank as collateral security, that the consideration of said note to his wife was "mules that he had purchased for her, and paid for, for her, that she was using on her farm." If this statement was the truth, the note was valid in the hands of the husband, and was binding on the wife, without any order or approval by the court. There being transactions, therefore, between husband and wife where her note payable to him would be entirely valid without the approval of the court, a negotiable note by the wife to the husband would not import any invalidity, and one who took such note

for a valuable consideration would not be bound to inquire first if the transaction of which the note was a part was approved by the court. The presumption would be in favor of the note, and its validity would depend upon the facts of the particular transaction. In our opinion, a negotiable note executed by the wife of the husband as payee is presumptively valid, and whoever takes it before maturity, for value and without notice of invalidity or equities, is protected in his title, except as to those defenses allowed by section 3694 of the Civil Code. In the present case the wife executed her note payable to the order of her husband, and delivered it to him. The note then became his property, and he pledged it to the bank to secure a present loan made to him. The note on its face contained no indicia of fraud, illegality, or defect. There was nothing to put the bank on inquiry. If, however, the husband at the time he negotiated the note informed the cashier that the note was in fact without any consideration, and was made by his wife simply for the purpose of being used by him as collateral security for a loan from the bank to him, then the note was a contract of suretyship by the wife, and the eventual assumption by her of his debt, and the bank, having notice of these facts, was not a bona fide holder and would not be protected. If, on the contrary, no statement was made to the bank by the husband at all as to the consideration of the note at the time he pledged it for the loan, or if he stated that the note was valid and was in consideration of property which he had bought for his wife and which she then had in her possession, the bank would be a bona fide holder and entitled to be protected as such. The evidence was in conflict as to these facts, and the case should have been submitted to the jury.                    *Judgment reversed.*