18969. MONTGOMERY *v.* PADGETT.

DECIDED JULY 11, 1928.

*H. H. Elders,* for plaintiff in error. *J. T. Grice,* contra.

LUKE, J. C. C. Padgett sued Charity Montgomery on a promissory note alleged to have been signed by her, and the jury rendered a verdict for the full amount sought to be recovered.

The defendant denied indebtedness, and further pleaded: (1) non est factum; (2) that she never received an attorney's fee notice; and (3) that after the death of her first husband, E. Wells, in February, 1910, she paid the plaintiff the full amount due him by Wells on a promissory note for $89.61, which was due November 1, 1908, and that was all Wells owed him. The plea was amended by adding the following defense: "Now comes the defendant and says that the note sued on is for the debt of her husband—former husband of this defendant, and she is not liable for the same, as she was a married woman at the time the note is alleged to have been signed."

The note sued on was introduced in evidence. It was for the

principal sum of $212.19, with certain credits thereon, dated August 9, 1911, due December 1, 1911, signed by Charity Montgomery by her mark, and witnessed by Frank Montgomery and J. A. Stanfield, a notary public and ex-officio J. P. The names of both witnesses were in Stanfield's handwriting. There were four credits on the note which were not sued for. The mortgage given to secure the note was also put in evidence. It bore the same date as the note, was signed and witnessed in the same way, and covered 103 acres of land. There was also in evidence a warranty deed from E. Wells to the defendant, dated December 14, 1908, and covering the tract of land described in the said mortgage.

C. C. Padgett testified positively that Charity Montgomery signed the said note and the mortgage at her home, and that the papers were witnessed by her husband and by J. A. Stanfield; that he accepted the note as full payment of his claim against the estate of E. Wells; that Wells, while Charity was his lawful wife, contracted the debt of $212.19 for which the note in suit was given; that all the payments made on the note by Charity were paid after the death of Wells, and that the note and the mortgage were given to take up the said debt of Wells. Charity Montgomery testified that she did not sign the note and the mortgage that Padgett said were signed by her; that E. Wells, her first husband, died in February, 1910, and that she married Frank Montgomery in April, 1911; that after Wells died Mr. Padgett told her Wells owed him about $80, and that she paid him that amount; that she never heard of the note sued on until Mr. Padgett's lawyer wrote her about it in the first of 1926, and that her former husband, E. Wells, left no estate. Frank Montgomery testified that he did not witness either the said note or the said mortgage, and that neither Mr. Padgett nor Mr. Stanfield came to his home in August, 1911, and got the note signed, as Mr. Padgett testified.

The motion for a new trial, which was overruled, contained the usual general grounds, and one special ground assigning error upon the charge of the court. The note was in evidence, the defendant admitted receiving the attorney's fee notice, and there was evidence that the defendant signed the note. Clearly the case hinges upon the special ground.

Plaintiff in error contends that the following excerpt from the charge of the court is not a correct statement of law and was in-

jurious to her case: "Though the defendant was a married woman at the time it is alleged that she signed the note and mortgage, I charge you that she could, even though she was married, assume the debt of a former husband." If this is a correct statement of law, the judgment must be affirmed; if not, it must be reversed.

There is evidence that while the defendant was married to Wells he became indebted to Padgett; that on December 14, 1908, Wells deeded the land described in the mortgage to her; that after the death of Wells in February, 1910, she married Frank Montgomery, in April, 1911; that while married to Montgomery she executed the note sued on, as an original undertaking on her part to pay the debt of her deceased husband; that the said debt which had been made by said Wells and was a debt of his estate was extinguished by the note and the mortgage given Padgett by her, and that Wells left no estate.

The Civil Code (1910), § 3007, provides that "while the wife may contract, she can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." "The provision of the code which declares that a wife can not bind her separate estate for the debts of her husband does not affect the power of a widow to contract with reference to such debts after his death." *Walker* v. *Walker,* 139 *Ga.* 547 (7-a) (77 S. E. 803), citing *Mize* v. *Hawkins,* 54 *Ga.* 500. To the same effect is the decision in the case of *Booker* v. *Small,* 147 *Ga.* 566 (2) (94 S. E. 999), which rules that "A wife has the right to assume the debts of the husband after his death, if she so chooses." Speaking for the court in the case of *Farmers & Traders Bank* v. *Eubanks,* 2 *Ga. App.* 839, 841 (59 S. E. 193), Hill, C. J., held that the restrictions mentioned in § 3007 of the Civil Code, supra, "were designed to protect the wife against the 'kicks and kisses' of her husband, her conjugal leanings, the importunities of her husband's creditors, and the pliant nature of feminine character." In short, it appears that the statute under consideration was designed to protect the wife against the influence, direct or indirect, of her husband. In the light of the decisions quoted above, a widow needs no such protection as to the debts of her deceased husband. Is it conceivable that she would be less able to protect her property against such

392

debts after she had taken unto herself another husband? We think not. In our opinion the case sub judice is controlled in principle by the following ruling in *Tindol* v. *Breedlove,* 19 *Ga. App.* 73 (90 S. E. 977): "While a married woman can not bind her separate estate by any contract of suretyship (Civil Code, § 3007), yet she may extinguish the debts of her son, or cause them to be extinguished, on her own credit, as an original undertaking, with a mortgage upon her property as security for the performance of her own contract. *Freeman* v. *Coleman,* 86 *Ga.* 590 (12 S. E. 1064); *Finch* v. *Barclay,* 87 *Ga.* 393 (13 S. E. 566). A mortgage given by a married woman to a creditor of her son, in extinguishment of a debt of the son, is valid. *Villa Rica Lumber Co.* v. *Paratain,* 92 *Ga.* 370 (17 S. E. 340)."

For no reason assigned did the court err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*